**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Grazino BAKER, Defendant–Appellant.**

No. 92–3429.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1993.

Decided Aug. 4, 1993.

Stephen B. Clark, Asst. U.S. Atty. (argued), Ranley R. Killian, Jr., Gerard B. Schneller, Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Curtis L. Blood, Collinsville, IL (argued), for defendant-appellant.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

In early September, 1990, Keith Davis and Benjamin "Buster" Awousa flew from New York to St. Louis to meet with Grazino Baker. Awousa wanted to evaluate the possibility of distributing cocaine through Baker in

the St. Louis area. During this initial visit, Awousa obtained a CyberTel beeper for Baker. At Awousa's behest, Davis returned to St. Louis a second time on September 29. He brought 10 to 14 ounces of cocaine along for Baker to distribute. Baker picked up Davis at the airport and drove him to the Drury Inn of Fairview Heights, Illinois, where Baker had reserved separate rooms on separate floors for himself and Davis.

Because Baker had lined up customers in advance, he and Davis began to weigh and prepare ounce packets of cocaine in Davis's room at the Drury Inn. Baker also took drug orders by beeper during this period. Once three or four orders had been prepared, Baker left to deliver the cocaine. After Baker left, Davis hid the remaining cocaine in the air conditioning unit in his room. According to Davis, he was expected to return $1200 per ounce of cocaine to Awousa in New York. The following morning, Baker turned over approximately $3900 to Davis.

While the two men prepared to leave Davis's room to get breakfast, Baker gave Davis a .38 caliber gun for protection. Baker himself was packing a 9 millimeter pistol. Having been tipped off, the police were staking out the Drury Inn. As the car carrying Baker and Davis left the motel and pulled onto the highway, the police signaled the car to stop. Baker, who was driving, took off, and a high-speed chase ensued. After Baker's car suffered a blow out, Baker fled on foot while the police apprehended Davis. Although Baker escaped arrest at that time, the police did find his identification card, shirt and beeper about one block from the car. Subsequent to Davis's arrest, the police searched the two rooms at the Drury Inn. They recovered $3900 in cash, 262.2 grams of cocaine in the air conditioner, and an additional 8.2 grams elsewhere in the room. At the time of this search, Baker's companion Bernette Johnston was spotted leaving Baker's room at the Drury Inn with a bag of his belongings. Among his possessions, the police recovered approximately $1000 that she had attempted to remove from Baker's motel room.

A jury found Baker guilty of conspiracy to possess with intent to distribute. Following the trial, Baker unsuccessfully moved for a new trial on the basis of newly discovered evidence. After being sentenced, he brought this appeal.

■ In his first argument, Baker maintains that at most the government proved a buyer-seller relationship, which falls short of showing a conspiracy to distribute. *See United States v. Townsend,* 924 F.2d 1385, 1394 (7th Cir.1991). After wrestling with the question of what constitutes sufficient evidence of a conspiracy to distribute, this court has embraced a standard requiring "proof of an agreement to commit a crime other than the crime that consists of the sale itself," *United States v. Lechuga,* 994 F.2d 346, 347 (7th Cir.1993) (en banc) (plurality opinion). In other words, there must be facts in evidence in addition to a sale for resale from which proof of a conspiracy to distribute can be inferred. *See generally United States v. Goines,* 988 F.2d 750, 759 (7th Cir.1993) (evidence of cooperation and mutual benefit); *United States v. Saunders,* 973 F.2d 1354, 1360 (7th Cir.1992) (single consignment transaction is evidence of conspiracy), *cert. denied,* — U.S. —, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *United States v. Blankenship,* 970 F.2d 283, 286-89 (7th Cir.1992) (discussing "line of demarcation" between sale and conspiracy). A number of such facts are present here. As the circumstances surrounding this case demonstrate, Baker contemplated more than a single buy-sell transaction with Davis (and his supplier Awousa). For example, after Baker received orders via his pager, Davis fronted the cocaine to Baker, who later returned with money from his customers. This sort of credit transaction is strong evidence of membership in a conspiracy. *See Blankenship,* 970 F.2d at 287. Moreover, the fact that this deal happened to be their first does not undermine numerous other indicia that further deals were contemplated by these men. Accordingly, viewing the abundant evidence in the light most favorable to the government reasonably leads to the inference that Baker had agreed to and prepared for ongoing cocaine distribution with Davis and Awousa.

■ Baker also contends that the government failed to verify testimony of Davis

regarding the actual registration of the pager. After the trial, defense counsel discovered that the pager Baker had been using at the Drury Inn was registered in the name of his father, not Awousa. Before sentencing, Baker moved unsuccessfully for a new trial on the basis of this newly discovered evidence. During its investigation, the government served a subpoena on CyberTel in order to obtain information regarding the pager police had seized. Because of conflicting identification and access numbers, CyberTel apparently never responded to the subpoena. Baker believes that the government was obliged to disclose the "failed" subpoena, apparently under the theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Baker contends that the government knew or should have known that the ownership of the pager was in question when the subpoena went unanswered. Given this knowledge ostensibly imputed to the government, the argument would follow that allowing Davis to testify that Awousa had obtained a CyberTel beeper for Baker may have resulted in Baker's being convicted on the basis of false testimony.

Under the circumstances, however, we cannot conclude that the government concealed exculpatory information; it merely did not seek to enforce an unanswered subpoena. Although the defendant would have us draw only negative inferences from this conduct, one perfectly plausible explanation is that the government elected not to pursue the CyberTel registration records after it had Baker's stipulation in hand that the pager belonged to him. Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant. *See United States v. White,* 970 F.2d 328, 337 (7th Cir.1992). In addition, characterizing this evidence as newly discovered belies one of the apparent strategies of Baker's counsel. During closing argument, defense counsel asserted that the government could have presented evidence from CyberTel regarding ownership and usage of the pager. Closing Arg. at 16. Thus, Baker's "discovery" of new evidence appears to be little more than an attempt to bootstrap a missed opportunity into a *Brady* claim.

■ Baker has also raised a pair of challenges to his sentence. First, he argues that the district court sentenced him erroneously when it found that the conspiracy involved 300 to 400 grams of cocaine. Baker was sentenced on the basis of the 270 grams of cocaine seized in the room at the Drury Inn as well as the three to four ounces (approximately 84 to 114 grams) that Davis had given to Baker the night before.[1] The sole question for our review is whether the amount applied by the district court was foreseeable. *See United States v. Edwards,* 945 F.2d 1387, 1392 (7th Cir.1991). In light of Baker's anticipated role in distributing drugs in the area and his actual role in cutting, packaging, and selling the cocaine at the Drury Inn, the district court did not err in sentencing him for both the amount distributed and that recovered.

■ Finally, Baker contends that the district judge did not make any finding in accordance with Fed.R.Crim.P. 32(c)(3)(D) on his request for a downward departure on the ground that this single crime represented aberrant behavior by the defendant. Baker points out that the district court expressly rejected his other arguments concerning "departures" for things such as acceptance of responsibility, reckless endangerment, and obstruction of justice. In fact, these considerations are more correctly characterized as

---

1. During the sentencing hearing, defense counsel contended that Baker should not be sentenced for the three to four ounces since Davis was sentenced for only 270 grams according to the terms of his plea agreement. On appeal, Baker is contesting instead the inclusion of the 270 grams in the sentencing calculation. Some of the confusion stems from an apparent error in the presentence report. Although the presentence report concluded that Baker was not responsible for the three to four ounces, both the defendant and the government agree that the probation officer made a mistake. According to the probation officer's reasoning, he meant to state that Baker was not responsible for possession of the 270 grams. This mistake is of no consequence since both sides are now arguing the applicability of the 270 grams in the sentencing.

adjustments rather than departures. And as far as Baker's behavior being aberrant, the district court did explain: "I don't think I stated before the sentence, the Court is not going to depart downward. There is absolutely no basis for doing that in this case. I have gone to the low end of the range because of the fact that this is the defendant's first offense." Sent.Tr. at 59. Since the district court did make a sufficient finding, we do not have jurisdiction to review its discretionary refusal to depart. *United States v. Franz*, 886 F.2d 973, 978 (7th Cir. 1989).

For the foregoing reasons, the conviction of the defendant is AFFIRMED.