In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1791, 99-2316 & 99-2373

United States of America,

Plaintiff-Appellee,

v.

Daniel Torres-Ramirez, John Douglas Byers,
and Rickey W. Franklin,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 3:98CR00017--Richard L. Young, Judge.

Argued April 10, 2000--Decided May 23, 2000


   Before Easterbrook, Kanne, and Rovner, Circuit Judges.

   Easterbrook, Circuit Judge.  Derrick Hardin managed a long-running cocaine distribution operation in Evansville, Indiana. Dissatisfied with the price his principal suppliers wanted for wholesale quantities, Hardin turned to his friend George Tyson, then living in California. Tyson came up with some cocaine and introduced Hardin to Enrique Rivera, who became Hardin's new principal source. When Rivera raised his price in June 1996, Hardin cut back his purchase from five kilograms to three and sought an alternate source for the remainder. Tyson suggested Rivera's brother-in-law, Daniel Torres-Ramirez, who Tyson had known for 10 years and from whom Tyson's brother Monte had acquired small quantities between 1993 and 1995. Torres-Ramirez beat Rivera's price, selling Hardin two kilograms of cocaine for a total of $31,000. But Hardin never dealt with Torres-Ramirez again, for Rivera cut his price (and expressed annoyance at having to compete for the business). Later in 1996 the distribution network collapsed when a courier was arrested carrying cocaine from California to Indiana. Eight persons were indicted in Evansville for conspiring to distribute cocaine. Five pleaded guilty; the three who went to trial were convicted and appeal.

   Plenty of evidence demonstrates that John Byers and Rickey Franklin conspired not only to distribute cocaine but also to launder the money produced by their criminal activities. Several

confederates, including Tyson, testified for the prosecution at trial. But after trial Tyson had a change of heart. Tyson furnished Franklin's lawyer with a statement that "[t]he Government made me say things to hurt Ricky [sic] Wayne Franklin that was [sic] not true." Tyson also asserted that a prosecutor "would read to me what I was to say and would make me read what I was to say until I had it the way they wanted it." A motion under Fed. R. Crim. P. 33 based on this recantation was summarily denied by the district court, and Franklin now argues that he is entitled to at least a hearing on the subject. But the judge already had heard Tyson's testimony and knew that the prosecutor did not lead Tyson by the nose in court. If his testimony had been rehearsed--well, that happens all the time. Franklin had ample opportunity to cross-examine Tyson about the events that preceded his testimony and the inducements he received for cooperation, and he did so at length. Under cross-examination Tyson denied that the prosecutor had put words in his mouth and stated: "basically they told me just to tell the truth." Tyson's effort to assist his former partner in crime by claiming that he committed perjury during the trial does not require the district judge to extend the proceedings.

Details adding verisimilitude could have justified a hearing, but Tyson's recantation was essentially fact free. What portions of his testimony, exactly, were untrue? What is the truth? Why should we think that the coaching was designed to replace truth with fabrication, rather than the other way 'round? Witnesses who have had criminal careers often must be forcefully reminded that trial is a time for scrupulous accuracy. Because Tyson's recantation was so sketchy, the district judge did not abuse his discretion--though it would have been prudent to give a short explanation rather than to deny the motion without comment, as the judge did.

Byers' principal appellate contentions concern his sentence. He believes that the district court credited "unreliable" evidence when calculating the quantity of cocaine for which he is accountable under the Sentencing Guidelines, and that the judge's explanations of his decision are insufficient. When a judge accepts the calculation of the presentence report, however, it is rarely necessary to add details. United States v. Berkey, 161 F.3d 1099, 1101-02 (7th Cir. 1998). Here the judge accepted the proposed calculation, which depended on a credibility assessment. Derrick Hardin testified at trial to precise quantities of drugs he had furnished to Byers. Like the jury (which would not have convicted had it disbelieved Hardin), the judge

credited Hardin's testimony. Byers calls Hardin "unreliable," but a defendant's entitlement to "reliable evidence" does not mean that appellate courts second-guess decisions to credit live testimony. The point of opinions insisting that evidence at sentencing be "reliable" is that, although courts may rely on hearsay or evidence with uncertain provenance, they should not go overboard: hearsay must have some indicia of reliability (e.g., corroboration). See U.S.S.G. sec. 6A1.3(a); Berkey, 161 F.3d at 1101-02. When the sentence rests on testimony under oath, however, it is enough that the judge believe the witness--unless the testimony is illogical or contradicted by documents or other physical evidence, making it clearly erroneous to accept the witness's version of events. Byers does not contend that the district judge committed a clear error by accepting Hardin's account of drug quantities. Byers does observe that Rahmon Graves, who saw part of a transaction in June 1996, testified that Hardin gave Byers one kilogram of cocaine; Hardin testified that he handed over 4 kilograms that month. These accounts do not conflict, because Graves did not testify that he witnessed all of the transactions between Hardin and Byers. Once again, however, by saying a few words along these lines the district judge would have avoided misunderstandings and averted an appellate issue. No more need be said about Byers' conviction and sentence; his other arguments have been considered but do not require discussion.

Torres-Ramirez has a much stronger argument, one that goes to the core of the prosecution. Evidence presented at trial demonstrates that Torres-Ramirez is a big-time drug dealer, able to sell multi-kilogram quantities on short notice. But he was not charged with distributing drugs, and for a very good reason: venue for that offense would be in California. See United States v. Rodriguez-Moreno, 526 U.S. 275 (1999). The only crime that could be prosecuted in Indiana is conspiracy in Indiana, but Torres-Ramirez contends that, whatever his misdeeds, that offense is not included. Taken in the light most favorable to the jury's verdict, the evidence supports these propositions about Torres-Ramirez:

He sold two kilograms of cocaine to Derrick Hardin in Los Angeles, California, in June 1996.

He met Hardin through George Tyson.

Between 1993 and 1995 he fronted modest quantities of cocaine to George's brother Monte.

Hardin and George Tyson demonstrated their trust in him by allowing him to leave with the money and return later with the cocaine.

He agreed to entertain proposals for future sales to Hardin but would not commit to terms. He invited Hardin to page him when he was in California and wanted to buy cocaine. A jury could believe that he furnished Hardin with his pager's number.

Do these facts support an inference that Torres-Ramirez conspired with Hardin (and others) to distribute cocaine in Indiana? Certainly Torres-Ramirez did not agree to do so expressly. He must have known that Hardin had his own customers, but nothing implies that he knew or cared who Hardin's confederates were, or where they resold the cocaine. Torres-Ramirez was asked to commit to future sales; he declined but invited proposals. Torres-Ramirez and Hardin did not make a second transaction. Unsurprisingly, Torres-Ramirez contends that his only relation to Hardin was that of seller to buyer, a relation that differs from conspiracy. "[T]he sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is required for conspiracy . . . is an agreement to commit some other crime beyond the crime constituted by the [sale] agreement itself." United States v. Lechuga, 994 F.2d 346, 349 (7th Cir. 1993) (en banc) (plurality opinion). See also United States v. Duff, 76 F.3d 122 (7th Cir. 1996).

The district court told the jury (over objection) that a "mere one time sale of a large quantity of drugs is not sufficient, by itself, to prove the seller has joined a drug distribution conspiracy." That is true. The instruction added: "To establish the seller has joined a conspiracy to distribute cocaine the government must also prove beyond a reasonable doubt the existence of evidence of an enduring relationship that directly or indirectly shows the seller had knowledge of the conspiracy to distribute drugs." This sentence is both misleading and false.

It is misleading because it tells the jury that only "the existence of evidence" must be shown beyond a reasonable doubt; instead the jury should have been told that the evidence must show a criminal agreement beyond a reasonable doubt. United States v. Shabani, 513 U.S. 10 (1994).

It is false to the extent it tells the jury that conspiracy has been established if "the seller had knowledge of the conspiracy to

distribute drugs." Knowing of a conspiracy differs from joining a conspiracy. United States v. Blankenship, 970 F.2d 283, 285 (7th Cir. 1992); United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir. 1990). Every seller of large quantities knows that his buyer intends to resell, and thus knows that his buyer is involved in a criminal conspiracy. No one distributes two kilograms on the street by himself. Lechuga considered and rejected an argument that knowledge of impending resale equates to conspiracy, so this instruction is reversible error. 994 F.2d at 347-50. (The lead opinion, which was joined by three judges, Judge Rovner's concurring opinion, id. at 357, and the dissenting opinion, id. at 357-64, also joined by three judges, agreed on this point. The lead opinion therefore establishes the holding of the case. Marks v. United States, 430 U.S. 188, 193 (1977).) Although Lechuga is an en banc opinion, heavily relied on by Torres-Ramirez, the United States does not so much as cite it. But this does not make Lechuga go away. The district judge needed to tell the jury to look for an agreement to join the Indiana distribution network, not just for knowledge of its existence.

Remand is not appropriate, however, because we conclude that the evidence would not have supported a conviction under the proper legal standard--that the prosecution demonstrate beyond a reasonable doubt an agreement to commit a crime other than the immediate sale. Torres-Ramirez therefore is entitled to acquittal. Cf. Burks v. United States, 437 U.S. 1 (1978). Even giving the prosecution the benefit of every inference that a reasonable jury could draw, we think that this is a one-sale case. Asked directly to agree to future sales, Torres-Ramirez declined. He gave Hardin a pager number, not an agreement. When L.L. Bean sends out a catalog, it does not agree to sell every item on demand, or enter into a conspiracy with the catalogs' recipients. The evidence demonstrates that Hardin trusted Torres-Ramirez, but many a buyer in an ordinary commercial sale pays first and receives delivery later.

Payment before delivery differs from delivery before payment, the "fronting" transaction from which an inference of agreement may be drawn. See United States v. Dortch, 5 F.3d 1056, 1065 (7th Cir. 1993); United States v. Baker, 1 F.3d 596, 597 (7th Cir. 1993). A dealer who "fronts" drugs to his customer depends for payment on the success of the resale venture, making it possible to infer that the dealer has agreed to participate in it: the dealer becomes at least a debt investor in the redistribution venture, if not an equity investor. The dealer wants the

redistribution to succeed, so he can collect. Torres-Ramirez and Monte Tyson thus may have conspired to distribute drugs in California. But Hardin's advance payment did not make Torres-Ramirez a partner in Hardin's business in Indiana; at most it made Hardin a (brief) creditor of Torres-Ramirez's business in California. Torres-Ramirez did not care whether the Evansville redistribution venture succeeded; he had his money already.

This record does not demonstrate the multiple sales that may support an inference of conspiracy. See Direct Sales Co. v. United States, 319 U.S. 703, 713 (1943); United States v. Menting, 166 F.3d 923, 928 (7th Cir. 1999); Lechuga, 994 F.2d at 349-50. It affirmatively establishes that Torres-Ramirez did not front drugs to the Indiana conspiracy and declined an invitation to agree to supply the Evansville group with its requirements. And the sentence implies that the district judge himself must have thought Torres-Ramirez innocent of conspiracy. The judge attributed to Torres-Ramirez two kilograms of cocaine as relevant conduct--the two kilograms Torres-Ramirez sold to Hardin. Yet conspirators are accountable under U.S.S.G. sec. 1B1.3(a)(1)(B) for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity". To say that Torres-Ramirez was responsible for only two kilograms is to say that no criminal acts of the Evansville group were "reasonably foreseeable" to him. The judge added when imposing sentence that Torres-Ramirez "did not, at least as far as the court knows, did not know it [the cocaine] was coming here [Indiana] or did not really care whether it was coming here." Yet if Torres-Ramirez was ignorant of the Evansville venture, how is it possible to say that he joined that venture? The sentence reflects a considered judgment by the district court that the only agreement into which Torres-Ramirez entered was an agreement to sell two kilograms of cocaine to Hardin, and that agreement is miles (about 1,740 miles) apart from an agreement to distribute cocaine in Evansville, Indiana. See, e.g., United States v. Smith, 34 F.3d 514, 523 (7th Cir. 1994); United States v. Lamon, 930 F.2d 1183, 1191 (7th Cir. 1991); United States v. Kimmons, 917 F.2d 1011, 1015 (7th Cir. 1990); United States v. Baker, 905 F.2d 1100, 1106 (7th Cir. 1990).

The judgments with respect to Byers and Franklin are affirmed. The judgment with respect to Torres-Ramirez is reversed, and the case is remanded with instructions to enter a judgment of acquittal.