In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 06-3678 & 06-3768

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM FULLER III & BRIAN K. JOHNSON,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 04-CR-253-7&9—**David H. Coar**, *Judge.*

———————

ARGUED OCTOBER 3, 2007—DECIDED JULY 11, 2008

———————

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

COFFEY, *Circuit Judge.* William Fuller and Brian Johnson were charged as part of a drug trafficking conspiracy operating in the southwest suburbs of Chicago, Illinois from January 2000 until March 2004. The conspiracy's self-professed ringleader, Rodney Bew, pleaded guilty and agreed to testify against Fuller and Johnson in exchange for the government recommending a reduction in his sentence. Fuller and Johnson jointly proceeded to trial, and a jury convicted Fuller of conspiring to possess with intent to distribute cocaine while finding Johnson

guilty of conspiring with intent to distribute cocaine and crack. *See* 21 U.S.C. §§ 841(a)(1), 846. In these consolidated appeals, Fuller challenges the sufficiency of the evidence underlying his conviction and the district court's determination at sentencing that he was responsible for more than 500 grams of cocaine. Johnson's appointed counsel moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he could not discern any nonfrivolous arguments to pursue. We affirm Fuller's conviction and sentence but deny Johnson's counsel's motion to withdraw.

**Background**

At trial Bew testified at length about his four-year drug-trafficking operation and Johnson's and Fuller's respective roles as deliveryman and purchaser. Bew testified that his operation included sales of powder cocaine, crack, and marijuana. Every week or two he would purchase up to one kilogram of cocaine from his suppliers. To maximize his profit, Bew would chemically alter the cocaine either by "cooking" it into crack, or by "rerocking" it—a process through which he diluted the cocaine with substances such as paint thinner. Bew sold the crack directly to users and the rerock cocaine to drug dealers.

Bew testified that Johnson assisted his operation by delivering crack to customers and returning the proceeds to Bew. Bew also taught Johnson to cook cocaine into crack. In return Bew rewarded Johnson with drugs or by paying for his hotel rooms. In support of Bew's testimony, the government introduced Johnson's grand jury testimony, in which he admitted that he delivered

at least 15 to 20 bags of crack for Bew every week between May and August of 2003. He also admitted that on several occasions he accompanied Bew to pick up and transport large quantities of powder cocaine from a supplier. Johnson further admitted that he supplied materials to help Bew prepare and package crack.

As for Fuller, Bew testified that he was a dealer who purchased rerock cocaine from Bew once every week or two beginning in March 2003. The amount of Fuller's purchases varied from an "eight ball" (three grams) up to 127 grams. Bew would give Fuller the cocaine on full or partial credit when he was without sufficient money to pay for it up front, which was the "majority of the time." Fuller usually would make payment within seven to ten days, and Bew would then use this money to buy more drugs. Bew estimated that Fuller bought between 750 grams and one kilogram of cocaine from him in 2003.

Although Bew knew that Fuller was a drug dealer, he did not know Fuller's customers nor did he typically share his customers with Fuller. Bew testified that Fuller was "his own man" and that they kept the customer "end of the business separate." But on one occasion, Bew brought Fuller a customer, Kendrick Pruitte, who wanted to purchase rerock cocaine. It is unclear whether Fuller actually sold Pruitte cocaine, but Bew testified he "believe[s] that they hooked up."

Bew testified that in addition to selling Fuller cocaine, he would occasionally buy small amounts from Fuller when his supply was low. Bew would also seek Fuller out for payments when he needed money to replenish his own cocaine supply. On one such occasion Bew called Fuller to say that he needed money to buy more cocaine, and Fuller agreed to pay him the $1,000 he

owed from a previous transaction. Three days later they spoke again, and when Bew pressed Fuller for money so he could go to his suppliers, Fuller asked for more time to sell his cocaine so he could get the money Bew needed.

In addition to Bew's testimony, the government offered transcripts of recordings taken from wiretaps of Bew's phone conversations. Of the approximately 12,000 intercepted calls during a two-month period, 39 involved conversations between Bew and Fuller. The recordings reveal that Bew and Fuller used code words when discussing their drug deals, with "basketball" or "pool table ball" referring to three grams of "work," or cocaine. In the first call, Bew asked Fuller for the $3,500 he owed for 4½ ounces of rerock cocaine that Bew had fronted him. Bew later informed Fuller that he had overpaid by $100 for a previous drug purchase. In another call Fuller told Bew to go to the hotel where he was staying to pick up cocaine out of the cigar box where he kept his stash.

Before jury deliberations began, the district court instructed the jury that "[t]he existence of a simple buyer/seller relationship between a defendant and another person without more is not sufficient to establish a conspiracy even where the buyer intends to sell cocaine/cocaine base." The jury found both Fuller and Johnson guilty of conspiracy. It returned a special verdict finding that Fuller had participated in a conspiracy involving more than 500 grams of cocaine, and that Johnson had participated in a conspiracy involving more than 500 grams of cocaine and at least 50 grams of crack. Both Johnson and Fuller filed motions for a new trial; the district court denied each of them.

At Johnson's sentencing, the district court found that Johnson was responsible for 134 grams of crack and

2 kilograms of powder cocaine. Using the drug equivalency table set forth in § 2D1.1(c)(3) of the sentencing guidelines, the court applied a base offense level of 34. The court also found that Johnson had threatened Bew when they were in lockup together during the trial; Johnson told Bew he would be killed in jail for cooperating with the government. The court accordingly added a two-level enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, and after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), sentenced Johnson to 262 months in prison, the low end of the guidelines range for Johnson's level IV criminal history and total offense level of 36.

At Fuller's sentencing, the district court found while overruling Fuller's objection that he was responsible for more than 500 grams of cocaine. The court based its finding on Bew's testimony that he sold Fuller at least 27 ounces, or approximately 750 grams, of cocaine in 2003. The court calculated a total offense level of 34, *see* U.S.S.G. § 2D1.1(c)(3), which, when applied against Fuller's criminal history category of VI, led to an advisory guidelines range of 262 to 327 months' imprisonment. The court sentenced Fuller to 262 months.

## Analysis

### I.   Fuller

On appeal Fuller argues that the evidence at trial demonstrated only that he had a buyer-seller relationship with Bew, and that such evidence is insufficient to sustain a conviction for conspiracy. Fuller also baldly asserts that the district court's determination that he is responsible for more than 500 grams of cocaine amounts to nothing

more than "nebulous eyeballing" and "unreliable guess-work." The arguments are without merit.

### A. Sufficiency of the Evidence

Fuller is waging an uphill battle in challenging the sufficiency of the evidence; to succeed, he is required to show that even when viewing the evidence in the light most favorable to the prosecution, "no juror could have found guilt beyond a reasonable doubt." *United States v. Luster*, 480 F.3d 551, 555 (7th Cir. 2007). We will not second-guess the jury's credibility determinations and will overturn Fuller's conviction only if the record is devoid of evidence from which a reasonable jury could find him guilty of conspiracy. *See United States v. Carrillo*, 435 F.3d 767, 775 (7th Cir. 2006).

Fuller is correct that a buyer-seller relationship is insufficient to sustain a conspiracy conviction. *See United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir. 1993) (en banc) (plurality). Instead, there must be evidence from which a rational jury could find that two or more people agreed to possess and distribute cocaine, and that Fuller "knowingly and intentionally joined in this agreement." *See Luster*, 480 F.3d at 555. To determine whether a conspiracy was proved, we look for "evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture." *United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001) (quotation marks and citation omitted). Factors that weigh in favor of such a finding include the length of the affiliation, the established method of payment, standardized transactions, and a level of mutual trust. *United States v. Hach*, 162 F.3d 937, 943 (7th

Cir. 1998). If enough of these factors "are present and point to a concrete, interlocking interest beyond individual buy-sell transactions," we "will not disturb the factfinders [sic] inference that at some point, the buyer-seller relationship developed into a cooperative venture." *Id.*

Taken in the light most favorable to the government, we are convinced that the evidence at trial established that Fuller's relationship with Bew went beyond that of a buyer and seller. Fuller argues that their transactions were insufficiently standardized, but he bought cocaine from Bew on a steady basis over the course of their five-month affiliation. Although the amount of cocaine varied with each purchase, Fuller bought distribution amounts of cocaine—ranging from 3 to 127 grams—every week or two. Fuller and Bew consistently used Bew's cellphone to communicate, and they used code words to discuss the types and amounts of drugs for each transaction. *See Luster*, 480 F.3d at 555 (identifying use of code words as indicator of conspiracy). Moreover, they had a standard method of payment; Bew testified that he gave Fuller drugs on full or partial credit the "majority of the time." A jury could very reasonably infer from the fact that Bew fronted drugs to Fuller not just an established, on-going relationship, but that they shared a high level of trust. *See United States v. Medina*, 430 F.3d 869, 882 (7th Cir. 2005); *United States v. Torres-Ramirez*, 213 F.3d 978, 982 (7th Cir. 2000). The jury also could have inferred mutual trust from Bew's testimony that he alerted Fuller when he overpaid for the cocaine, and that Fuller instructed Bew to go to his hotel room on one occasion to pick up drugs.

Most importantly, the evidence at trial reflected that Fuller had a shared stake in Bew's enterprise. Bew's

fronting cocaine to Fuller showed they shared an interest in the success of Fuller's sales; unless Fuller sold the cocaine, Bew would not be paid. *See Torres-Ramirez*, 213 F.3d at 982. And on more than one occasion Fuller agreed to settle an outstanding debt so that Bew could purchase cocaine from his suppliers. At one point Fuller asked Bew for time to make a few drug sales to raise money that he owed to Bew so he could purchase more cocaine. At other times, Fuller would bolster Bew's cocaine supply, and on at least one occasion Bew brought a customer directly to Fuller when Bew was low on drugs. All of this evidence gives rise to an inference that Fuller and Bew cooperated in furtherance of a drug trafficking operation that went beyond Fuller's role as buyer and Bew's role as seller. *See Luster*, 480 F.3d at 555-56; *United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2006) (noting that evidence that coconspirators were on same side of drug transaction sufficient to establish conspiracy).

Fuller argues that no reasonable jury could infer that he shared a stake in a larger drug trafficking conspiracy because Bew regularly duped him by selling him rerocked cocaine. But the only evidence that this scam had any effect on Fuller's sales is the recording of one phone call in which Fuller complained about a "drought" caused by "bad drugs." There is no evidence that Fuller had trouble profiting from the rerocked cocaine on a regular basis. And the fact that Bew dishonestly tried to maximize his own profits by secretly diluting the cocaine used in his transactions with Fuller does not diminish the evidence showing that Bew relied on Fuller to sell the rerocked cocaine. Accordingly, Fuller has not met his heavy burden of showing that the evidence was insufficient to sustain his conspiracy conviction.

### B.  Fuller's Sentence

Fuller argues and speculates that we should remand for resentencing because in finding him accountable for more than 500 grams of cocaine, the district court erroneously relied on Bew's testimony that he sold Fuller between 750 grams and one kilogram in 2003. He argues that the wiretap transcripts contradict Bew's testimony because, according to Fuller, they show that only 73 grams of cocaine changed hands between him and Bew over a two-month period. We review the district court's calculation of drug quantity for clear error, meaning we will remand only if we are left with "a definite and firm conviction that a mistake has been committed." *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007) (citation omitted).

Fuller's argument ignores the jury's special verdict finding that Fuller is accountable for at least 500 grams of cocaine. In light of the special verdict, it would have been "both unnecessary and inappropriate for the judge to reexamine, and resolve in the defendant's favor, a factual issue that the jury has resolved in the prosecutor's favor beyond a reasonable doubt." *See United States v. Rivera*, 411 F.3d 864, 866 (7th Cir. 2005). The special verdict bound the court to a statutory minimum sentence of 5 years. *See* 21 U.S.C. § 841(b)(1)(B)(ii). But Fuller argues that the government should be judicially estopped from asserting that the special verdict is binding because it did not object when the court said at sentencing that it considered the special verdict to be advisory. But judicial estoppel is a doctrine of equity, *see Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006), and Fuller has not explained why it would be unfair to find the special verdict binding for purposes of calculating a guidelines range where it is indisputably binding to

determine the mandatory minimum sentence. *See Rivera*, 411 F.3d at 866.

In any event, the transcripts do not contradict Bew's testimony that he sold Fuller at least 750 grams of cocaine. The transcript of the first call between Fuller and Bew reveals that Fuller owed Bew $3,500 for drugs he had fronted, an amount reflecting Bew's price for 126 grams of cocaine. That call corroborates Bew's testimony that he sold anywhere from 3 grams to 126 grams of cocaine to Fuller in each of their transactions. The frequency of the calls between Fuller and Bew corroborates Bew's testimony that he sold Fuller cocaine once a week or once every two. And more than one call shows that Bew was seeking payment for debts of $1,000, a price consistent with a sale of approximately two ounces of cocaine. At sentencing, the government was required to show the amount of drugs only by a preponderance of the evidence, *see Artley*, 489 F.3d at 821, and Fuller has not demonstrated that anything in the wiretaps shows that the court clearly erred in finding that the government met its burden.

## II. Johnson

Johnson has filed a response opposing counsel's *Anders* submission. *See* Cir. R. 51(b). Our review is limited to the potential issues identified in counsel's facially adequate brief and in Johnson's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Counsel first considers whether Johnson could argue that there was insufficient evidence to support his conviction for conspiracy involving crack rather than powder cocaine, but properly concludes that any such argument

would be frivolous. Bew specifically testified that Johnson delivered crack for him, and he described how he taught Johnson to cook powder cocaine into crack. What's more, the government introduced Johnson's own grand jury testimony in which he admitted selling 15 to 20 one-gram bags of crack for Bew every week over a four-month period. The jury believed him; it returned a special verdict finding that the conspiracy involved at least 50 grams of crack. Johnson asserts in his response that there was no "physical evidence" that the drugs he dealt were crack, but such evidence is unnecessary given Bew's testimony and his own admissions. Johnson also asserts that it was his brother (who uses the same nickname as Johnson), not him, who delivered crack for Bew. But again, his assertion is belied by his own grand jury testimony.

Counsel next asks whether Johnson could argue that the district court improperly prevented his trial counsel from determining Bew's motive on cross-examination. Johnson asserts that he could argue that the court erred by preventing his trial counsel from asking Bew whether he agreed to testify in exchange for the government's promise to drop charges filed against Bew's wife. Although Johnson was entitled to cross-examine Bew for evidence of motive, the court may limit irrelevant testimony. *See* Fed. R. Evid. 402; *United States v. Smith*, 454 F.3d 707, 714 (7th Cir. 2006). The government stated that it dropped the charges against Bew's wife after a magistrate judge found no probable cause to support them. The court determined that because the charges were dropped before Bew was interviewed under a proffer agreement and pleaded guilty, the decision did not affect Bew's decision to testify. The court allowed trial counsel to elicit

from Bew on cross examination testimony about his prior convictions, his plea agreement, and the substantial sentence reduction he received in exchange for his testimony. Thus counsel correctly concludes that it would be frivolous for Johnson to argue that the court's limitation of Bew's cross-examination was improper.

Johnson asserts that he could argue that the government violated the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence of its true motivation for dropping the charges against Bew's wife. Johnson asserts that one year after his trial he reviewed the transcript from her preliminary hearing and determined that the government requested that the charges against her be dropped. But that is entirely consistent with the government's explanation that it decided to drop the charges after a magistrate found no probable cause. Accordingly, the potential *Brady* argument that Johnson identifies is frivolous.

Counsel next turns to the notice the government filed under 21 U.S.C. § 851 and asks whether Johnson could argue that it gave inadequate notice of the government's intent to seek an enhanced mandatory minimum sentence of 20 years based on Johnson's previous drug convictions. But counsel properly concludes that the notice was sufficient to alert Johnson to the consequences of a guilty verdict and to give him the chance to dispute the accuracy of his prior convictions. *See United States v. Cooper*, 461 F.3d 850, 854 (7th Cir. 2006). And counsel correctly observes that it would be frivolous to argue that the government was required to file a second § 851 notice after filing the second superseding indictment. *Id.* at 853-54.

Counsel next considers whether Johnson could argue that the district court erroneously applied a two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1. Johnson asserts that he could argue that there was no evidence to support this enhancement. But the presentencing report ("PSR") describes in detail the factual basis for the enhancement; it states that after the first day of trial a United States Marshal was present when Johnson told Bew that he would be killed in prison for testifying. In his objections to the PSR, Johnson admitted that he made the statement but blamed the Marshals for putting him and Bew in the same lockup. Thus the court was entitled to rely on the accuracy of the PSR's description of these events, and it would be frivolous to argue that no evidence supports the enhancement. *See United States v. Parolin*, 239 F.3d 922, 925 (7th Cir. 2001). Counsel also correctly concludes that it would be frivolous to argue that the enhancement was improper because it did not deter Bew from testifying; an unsuccessful attempt to obstruct justice is sufficient under § 3C1.1. *See United States v. Davis*, 442 F.3d 1003, 1009 (7th Cir. 2006).

Finally, counsel asks whether Johnson could argue that the district court miscalculated the drug quantity attributable to him for sentencing purposes. The court relied on Johnson's testimony that during a sixteen-week period he delivered for Bew at least 15-20 bags containing one gram or half-gram of crack. The court used the most conservative calculation possible from this testimony; it determined that Johnson was accountable for delivering only 15 half-gram bags during that period, for a total of 120 grams of crack. The court then found that Johnson admitted receiving from Bew as payment

14 grams of crack. Adding that to the 120 grams delivered, the court attributed to Johnson 134 grams of crack. The court also found that Johnson admitted transporting two kilograms of powder cocaine for Bew. The court then consulted the drug equivalency table set forth in § 2D1.1, advisory note 10, and properly determined that 134 grams of crack and two kilograms of powder cocaine translate to 2,680 and 400 kilograms of marijuana, respectively. Consulting the drug quantity table set forth in § 2D1.1(c), the court determined that 3,080 kilograms of marijuana resulted in a base offense level of 34.

Counsel considers whether Johnson could argue that the court miscalculated the amount of crack attributable to Johnson because he testified only that he received as payments one eight ball (3.5 grams) of crack, rather than 14 grams. Counsel points out that this distinction makes a difference because the extra 9.5 grams put Johnson over the 3,000 kilogram threshold that stands between base offense levels of 32 and 34. But as counsel correctly notes, we would review the district court's calculation of the crack quantity only for clear error. *See Artley*, 489 F.3d at 821. The court's crack calculation rests on its conservative determination that Johnson delivered half-gram bags of crack 15 times per week during a sixteen-week period. But Johnson testified that he often delivered crack in one-gram bags, and that he did so up to 20 times a week during that period. Johnson's testimony thus supports a finding that he delivered much more—and certainly 9.5 grams more—than the 120 grams the court attributed to him. Thus counsel correctly concludes that it would be frivolous to argue that the court's calculation of the crack quantity was clearly erroneous.

Counsel concludes that any other challenge to Johnson's sentence would be frivolous, but in light of the Supreme

Court's decision in *Kimbrough v. United States,* 128 S. Ct. 558, 564 (2007), we cannot agree. In *Kimbrough* the Supreme Court held that district courts, in evaluating the factors under 18 U.S.C. § 3553(a), are free to consider the differential in guidelines ranges for offenses involving like amounts of crack and powder cocaine. 128 S. Ct. at 575. At sentencing Johnson did not specifically ask the district court to consider the differential, but we may presume that the purpose of challenging whether his offense involved crack or powder cocaine was to avoid the effects of that differential. *See United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008). Accordingly, Johnson preserved the issue of whether the district court could consider the differential at sentencing. *See id.* Although the court did not say whether it agreed with the 100:1 ratio that existed at the time it sentenced Johnson, neither did the court say that it would impose the same sentence if not constrained by the guidelines. As a result, we have no way of knowing on this record whether the court would have imposed the same sentence had it known that it had the discretion to consider the differential in guidelines ranges for crack and powder cocaine. *Cf. United States v. White*, 519 F.3d 342, 349 (7th Cir. 2008). Thus it would not be frivolous for counsel to argue that a remand is appropriate. *See Padilla*, 520 F.3d at 774; *United States v. Taylor*, 520 F.3d 746, 747-48 (7th Cir. 2008).

Accordingly, we DENY Johnson's counsel's motion to withdraw and direct counsel to file a brief on the merits addressing this issue and any others he might deem appropriate. We do, though, invite the parties to file a joint motion for a remand, should they deem that appropriate. We AFFIRM Fuller's conviction and sentence.

Briefing in Johnson's appeal will proceed as follows:

1.   The brief and required short appendix of the appellant are due by August 11, 2008.

2.   The brief of the appellee is due by September 10, 2008.

3.   The reply brief of the appellant, if any, is due by September 24, 2008.

Note:   Circuit Rule 31(e) (amended Dec. 1, 2001) requires that counsel tender a digital copy of a brief, from cover to conclusion, at the time the paper copies are tendered for filing. The file must be a text based PDF (portable document format), which contains the entire brief from cover to conclusion. Graphic based scanned PDF images do not comply with this rule and will not be accepted by the clerk.

Rule 26(c), Fed. R. App. P., which allows three additional days after service by mail, does not apply when the due dates for briefs are specifically set by order of this court. All briefs are due by the dates ordered.

Important Scheduling Notice !

Notices of hearing for particular appeals are mailed shortly before the date of oral argument. Criminal appeals are scheduled shortly after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief. If you foresee that you will be unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period and the reason for such unavailability. Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf. Once an appeal is formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).