NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 22, 2009
Decided May 14, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2962

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:07 CR 47 (17) |
| DEMOND JERRAH HARDIMON, *Defendant-Appellant*. | Philip P. Simon, *Judge*. |

**O R D E R**

Demond Hardimon was convicted after a jury trial of conspiring to distribute one kilogram or more of heroin. *See* 21 U.S.C. §§ 841(a)(1), 846. The district court found that Hardimon had a prior state conviction for a felony drug offense and sentenced him to the mandatory minimum term of 240 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Hardimon challenges his conviction on appeal, contending there was a fatal variance between the conspiracy charged in the indictment and the government's proof at trial. He also attacks the application of the 20-year mandatory-minimum sentence, asserting that the evidence was insufficient to establish that he participated in the conspiracy after his state felony drug conviction. We agree that a variance occurred. The evidence at trial established only a smaller conspiracy and not the larger conspiracy charged. But because Hardimon

was not prejudiced by the variance, we affirm the conviction. At sentencing, however, the court premised its determination that Hardimon is subject to the 20-year mandatory minimum on Hardimon's continued participation in an alleged conspiracy that the government now concedes was not sufficiently proven. We therefore vacate the sentence and remand to the district court for resentencing.

## I. Background

In April 2007 Hardimon, along with 16 codefendants, was charged with one count of conspiracy to distribute heroin. Count One of the superseding indictment charged the 17 defendants with knowingly conspiring "one with another and with other persons known and unknown to the Grand Jury" to possess and distribute heroin. Of the 17 defendants, all but Hardimon and Tariq Wilson pleaded guilty. Hardimon and Wilson proceeded to trial, and although Wilson was acquitted, the jury found Hardimon guilty.

The government's theory at trial was that a number of suppliers in Illinois—Hardimon, Wilson, Jackie Hernandez, James Brown, and Keith Moeller—all sold heroin to three key middlemen from Indiana—Andrew Foster, Matthew Bishop, and Christopher Higi—who then resold the heroin in Indiana. The government contended that together, the Illinois suppliers participated in a conspiracy with the Indiana middlemen to further distribute the heroin. With respect to Hardimon, the government contended that he worked for a man named Ghost and had other individuals named Disco, Black, and Cam working for him to distribute heroin, all as part of the larger conspiracy. The government further contended that a number of other members of the conspiracy—Amber and A.J. Shultz, Jessica Spillers, Joanna Oshaben, Linda Rozgony, Anthony Cardwell, Ryan Slicker, Kurt and Brad Dryer, and Robert Breitbarth—many of whom were originally customers of Foster, Bishop, and Higi, traveled in groups from Indiana to Illinois to buy heroin from Hardimon and his employees, as well as from the other Illinois suppliers.

In support of this theory, the government produced 15 witnesses: 12 individuals who testified about their activities as either buyers or suppliers of heroin and 3 law-enforcement officers who testified about the investigation. The government also introduced telephone records showing a high number of calls between various codefendants.

The evidence showed that Hardimon sold heroin for at least three years, from 2003 to approximately the middle of 2006. Hardimon worked for Ghost, who set the price of the heroin and steered customers to Hardimon by handing out Hardimon's telephone number to potential buyers. Hardimon had at least three men—Disco, Black, and Cam—working

for him, taking orders, accompanying him during sales, and delivering the heroin. Hardimon monitored his employees' performance, meeting separately with his customers to ask whether they were satisfied, and later replaced Disco with Cam following a number of complaints about Disco's performance. Together, Hardimon and his employees sold heroin to the Indiana middlemen and others. Those buyers routinely called Hardimon from Indiana to arrange a purchase and then traveled together in groups to meet Hardimon or one of his employees in Chicago Heights. Hardimon and his employees also sold heroin to Brown and Moeller, and Hardimon knew that the two men were reselling the heroin to Indiana residents. Many of the witnesses testified that they initially began buying heroin from Foster, Bishop, Higi, Brown, or Moeller, who were all supplied by Hardimon, but after meeting Hardimon or one of his associates, the witnesses testified, they eventually began buying directly from Hardimon.

At the close of the government's case, Hardimon moved for a judgment of acquittal, but the district court denied the motion. The jury acquitted Wilson but found Hardimon guilty of the sole count of conspiracy, returning a special verdict finding that the overall conspiracy involved one kilogram or more of heroin. Hardimon then renewed his motion for acquittal and, in the alternative, moved for a new trial. He argued that there was a fatal variance between the indictment and the evidence presented at trial because, he contended, the government did not present any evidence that he had anything more than a buyer-seller relationship with his buyers or that he had participated in the single overarching conspiracy charged in the indictment. In response the government maintained that sufficient evidence supported the larger conspiracy, but argued that even if it had failed to prove a conspiracy among all 17 defendants, the evidence showed a smaller conspiracy between Hardimon and the Indiana middlemen.

In ruling on Hardimon's motions, the district court agreed that there was a variance between the evidence presented and the single overarching conspiracy alleged in the indictment. The court explained that as in *United States v. Bustamante*, 493 F.3d 879, 885 (7th Cir. 2007), the conspiracy was a "hub and spoke" or "wheel" conspiracy, but that no "rim" connected Hardimon to the other heroin suppliers, a fact which was necessary to prove the larger charged conspiracy. Nevertheless, the court found that the evidence showed a conspiracy between Hardimon and the Indiana middlemen, given the evidence that Hardimon knew the middlemen were distributing heroin and that he engaged in prolonged and routine sales of large quantities of heroin to the middlemen. The variance in the indictment was not fatal, the court explained, because sufficient evidence supported Hardimon's guilt of a smaller conspiracy, and in light of the jury's acquittal of Wilson, there was no reason to believe that the jury was confused or unable to distinguish the evidence that was relevant only to other suppliers. The court therefore denied Hardimon's motions.

At sentencing the district court determined, over Hardimon's objection, that he had a prior felony conviction for a drug offense, which qualified him for the statutory mandatory-minimum sentence of 20 years' imprisonment under 21 U.S.C. § 841(b)(1)(A). Hardimon admitted that he had been convicted in state court for felony possession of heroin, but he argued that insufficient evidence established that he had participated in the conspiracy after his state conviction became final on January 27, 2006. The court concluded, however, that Hardimon continued to sell heroin to several coconspirators (Foster, Shultz, and Brown) as late as mid-2006, and therefore the 20-year minimum sentence applied. The maximum sentence under the applicable guidelines range for Hardimon's offense was less than the statutory mandatory minimum; thus, the court sentenced Hardimon to the mandatory minimum, 240 months' imprisonment and 10 years' supervised release. *See* U.S.S.G. § 5G1.1(b).

## II. Discussion

Hardimon appeals both his conviction and sentence. First, he renews his argument that there was a fatal variance between the conspiracy alleged in the indictment and the evidence presented at trial. Moreover, he challenges the sufficiency of the evidence that he participated in any conspiracy. Finally, Hardimon challenges the application of the 20-year mandatory-minimum sentence under § 841(b)(1)(A), contending that the district court erred in finding that he participated in the conspiracy following his state felony drug conviction.

We review de novo a district court's decision to deny a motion for acquittal. *United States v. Christ*, 513 F.3d 762, 770 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 267 (2008). Hardimon first claims a fatal variance, challenging the sufficiency of the evidence "supporting the jury's finding that each defendant was a member of the *same* conspiracy." *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991) (emphasis added); *see United States v. Bustamante*, 493 F.3d 879, 885 (7th Cir. 2007), *cert. denied sub nom*, *Liscano v. United States*, 128 S. Ct. 1460 (2008); *United States v. Wilson*, 134 F.3d 855, 865 (7th Cir. 1998). If the government proved only multiple smaller conspiracies rather than the larger single conspiracy charged, the variance will necessitate reversal only if Hardimon can show that he was prejudiced by the evidence presented. *See Bustamante*, 493 F.3d at 885; *United States v. Mojica*, 185 F.3d 780, 786 (7th Cir. 1999); *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996). Absent a showing of prejudice, however, Hardimon's conviction of conspiracy will stand. *See Bustamante*, 493 F.3d at 887-88; *Townsend*, 924 F.2d at 1410-12.

Hardimon points to the lack of sufficient evidence supporting the overarching conspiracy. To establish Hardimon's guilt of conspiracy, the government was required to

show that Hardimon had either an explicit or implicit agreement with his coconspirators to distribute heroin. *See United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008) ("What is necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself.") (internal quotation marks and citation omitted); *Bustamante*, 493 F.3d at 884.

Hardimon is correct: The record lacks evidence of an agreement among all the indicted defendants to join a shared effort to distribute heroin, and so there is a variance. *See Bustamante*, 493 F.3d at 886-87. As the district court noted, the conspiracy alleged in the indictment was a wheel conspiracy "in which a core conspirator" at the hub "moves from spoke to spoke, directing the functions of the conspiracy." *Id.* at 885 (internal quotation marks and citation omitted). The Indiana buyers, particularly Bishop and Foster, were alleged to be at the hub, buying heroin from various suppliers, the "spokes." To prove a single overarching conspiracy, the government had to produce some evidence beyond Hardimon's mere knowledge of the other suppliers of a shared agreement among the suppliers to further the conspiracy's cause. *See id.*; *United States v. Stigler*, 413 F.3d 588, 592-93 (7th Cir. 2005). Instead, the evidence showed that Hardimon was in direct competition with the other suppliers: Hernandez, Wilson, Brown, and Moeller. Hardimon actively sought to steal business from Brown and Moeller, resented Brown's dealings with Hernandez, and otherwise had no involvement with Hernandez or Wilson.

The district court found that despite this variance, the government had presented sufficient evidence of a conspiracy between Hardimon and the Indiana middlemen to support his conviction. But at oral argument the government conceded that in light of our recent holding in *United States v. Colon*, 549 F.3d 565 (7th Cir. 2008), the evidence is insufficient to support a conspiracy between Hardimon and the Indiana middlemen. In *Colon* we reiterated that standardized, repeat sales of drugs to a known distributor do not alone establish a conspiracy. 549 F.3d at 567-68; *see also United States v. Fuller*, 532 F.3d 656, 662 (7th Cir. 2008); *United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir. 1993). Rather, conspiracy requires evidence of "an agreement with the same joint criminal objective," such as sales on credit; an agreement to look for additional customers; a payment of commission on sales; or warnings of threats to the business from competitors or law enforcement. *Colon*, 549 F.3d at 569-70. Here, despite evidence showing routine and prolonged transactions between Hardimon and the Indiana middlemen, the record reveals no evidence of sales on credit, commission sales, or anything else to suggest Hardimon was actually profiting from or encouraging the resale of the drugs he sold.

Nevertheless, the record contains substantial evidence from which a jury could find Hardimon's participation in a smaller conspiracy to distribute heroin with Ghost, Disco, Black, and Cam. As many of the Indiana buyers testified, Hardimon worked for Ghost, and

he deferred to Ghost on the sale price. Disco, Black, and Cam all worked with or for Hardimon, traveling with him to drug transactions or completing them for him. Hardimon monitored and evaluated his employees' performance in delivering the heroin for him, specifically asking his customers whether they were satisfied with the service. This evidence, which we must view in the light most favorable to the verdict, *see Christ*, 531 F.3d at 771, shows an explicit agreement between Hardimon and Ghost, Disco, Black, and Cam to work together to distribute heroin.

Hardimon, however, contends that the government produced no evidence of the length of these relationships or that he was ever working with more than one person at a time. But neither a set duration nor the participation of more than two people are required to establish a conspiracy. *See Colon*, 549 F.3d at 569; *Stigler*, 413 F.3d at 592. Hardimon also argues that the government did not address the smaller conspiracy at trial. But this contention is belied by the record; the government argued the existence of this conspiracy in both its opening and closing statements, repeatedly stating that Hardimon worked for Ghost; that Black and Disco worked for Hardimon; and that their activities together were "part of the conspiracy." The government further elicited testimony from numerous witnesses about Hardimon's associates, and the witnesses consistently testified that Hardimon worked for Ghost; he had employees who accompanied him or delivered the heroin for him; and he followed up with his customers to determine whether they were satisfied with his employees' performance.

Our determination that there was a variance between Hardimon's indictment and the proof at trial, however, is alone insufficient to warrant relief; Hardimon must show that he was prejudiced by it. *See Bustamante*, 493 F.3d at 887; *Mojica*, 185 F.3d at 786. We consider several factors when determining whether a defendant was prejudiced by a variance, including surprise to the defendant, the possibility of subsequent prosecution for the same offense, the likelihood of jury confusion based on the number of conspirators charged and the number of conspiracies proven, and the likelihood of juror confusion related to evidence admissible only against other defendants. *Bustamante*, 493 F.3d at 887; *Townsend*, 924 F.2d at 1410-11. Hardimon argues that the evidence regarding other suppliers' sales, including the much larger quantities of heroin sold by Hernandez, qualifies as prejudicial "spillover" evidence. *See Bustamante*, 493 F.3d at 887. He also contends that the jury was likely confused by the multiple conspiracies alleged. But as in *Bustamante* and *Townsend*, the evidence admissible against Hardimon alone was "more than sufficient" to establish that he conspired to distribute heroin. *See id.* (finding no prejudice where the evidence against the defendant "was strong enough to overcome any prejudice that may have resulted from the admission of evidence relevant only to other defendants"); *Townsend*, 924 F.2d at 1410-11 (same). Moreover, the record testimony estimating Hardimon's total sales to Spillers, Foster, Shultz, Bishop, Oshaben, and Brown, just six of

the eleven people who testified about purchases from Hardimon and his employees, shows that the jury could easily find Hardimon accountable for distribution of more than one kilogram of heroin. The fact that the jury was able to distinguish the evidence with respect to each defendant and acquit Wilson further supports the conclusion that the jury was not confused by the variance.

Hardimon also argues that he was surprised by the evidence of a conspiracy with Ghost and Black, but the indictment's allegation of a conspiracy agreement alone was sufficient notice of the charge that Hardimon needed to be prepared to meet, and the indictment was not required to name all those who participated in the conspiracy. *See Townsend*, 924 F.2d at 1389-90. Moreover, the government clearly argued the participation of Ghost, Disco, and Black in the conspiracy throughout the course of the trial. Although the government did not argue the smaller conspiracy in response to Hardimon's motion for acquittal, it emphasized the conspiratorial nature of Hardimon's relationship with Ghost, Disco, and Black at trial in its opening statement: "[T]he sellers of this heroin weren't working alone. You will hear that Demond Hardimon . . . was working for a guy known as Ghost . . . . Hardimon had guys working for him. Guys that went by the name of Disco and Black . . . ." The government reiterated this conspiracy to the jury during its closing argument: "Now, bear in mind that what you hear[d] Demond Hardimon do with Ghost is part of the conspiracy. Even though Ghost was not identified at the time and not charged, the indictment as will be read to you charges these people with conspiring with other co-defendants and with persons known and unknown to the Grand Jury." And the government further emphasized Hardimon's "managerial role, checking up on employees," and noted that Hardimon "fired Disco . . . [a]nd someone named Cam started working for him." Hardimon therefore had sufficient notice of the evidence presented at trial and the conspiracy alleged. Thus, he has failed to show that he was prejudiced by the variance, and we affirm his conviction.

Finally, Hardimon challenges the application of the 20-year mandatory-minimum sentence under 21 U.S.C. § 841(b)(1)(A). The district court concluded that Hardimon had a prior conviction for a felony drug offense—his state conviction for distribution of heroin in January 2006—qualifying him for the 20-year mandatory-minimum term of imprisonment for recidivist drug offenders. *See* § 841(b)(1)(A). Hardimon maintains that the conviction doesn't qualify as a "prior" conviction because, he contends, insufficient evidence established that he participated in the conspiracy after his conviction in January 2006.

We review a district court's findings of fact used in applying a mandatory-minimum sentence for clear error. *United States v. Arreola-Castillo*, 539 F.3d 700, 703 (7th Cir. 2008). For Hardimon to qualify for the mandatory-minimum sentence under § 841(b)(1)(A), the court needed to find that he continued his criminal activity after his prior conviction became

final on January 27, 2006. *See United States v. Garcia*, 32 F.3d 1017, 1019-20 (7th Cir. 1994). Based on a review of the evidence presented at trial, the court found that Hardimon continued to participate in the conspiracy after his conviction. The court explained that the testimony of Foster, Shultz, and Brown, each of whom testified that they purchased heroin from Hardimon after January 2006, showed Hardimon "distributing heroin to the core conspirators well beyond his January 27, 2006 state court conviction." But the court based this finding on its determination that Hardimon participated in a conspiracy that the government now concedes was not proven at trial. And because the court believed the relevant conspiracy to be between Hardimon and the Indiana middlemen, it did not make any findings as to whether Hardimon's conspiracy with Ghost, Disco, Black, or Cam continued after his January 2006 conviction. We therefore vacate Hardimon's sentence and remand for resentencing to allow the district court to determine, in the first instance, whether Hardimon continued his participation in the smaller conspiracy after his state conviction and thus qualifies for the 20-year mandatory-minimum sentence.

### III. Conclusion

Accordingly, we AFFIRM Hardimon's conviction for conspiracy, VACATE the sentence, and REMAND for resentencing consistent with this opinion.