In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 06-3057, 06-3658, 06-3660 & 06-4047

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VICTOR GOODWIN, a/k/a BLOCK, a/k/a SKEEZY,
JERMAL PHILLIPS, TIMOTHY DOERR, and LEO BROWN, JR.,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
Nos. 04-19-CR-01, 04-19-CR-02, 04-19-CR-014 & 04-19-CR-17—
**Richard L. Young**, *Judge.*

_____

ARGUED MAY 4, 2007—DECIDED JULY 23, 2007

_____

Before POSNER, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* A jury convicted Victor Goodwin, Leo Brown, Jr., Timothy Doerr, and Jermal Phillips of multiple counts of drug trafficking and other related offenses stemming from a multi-state conspiracy. Following their convictions, the four defendants filed a consolidated appeal challenging various aspects of their respective convictions and sentences. We affirm.

I.

Victor Goodwin, Leo Brown Jr., Timothy Doerr, and Jermal Phillips (collectively the "Appellants") were among twenty-one defendants named in a July 14, 2004, federal indictment charging drug trafficking and related offenses. Specifically, the Appellants and seventeen co-defendants were charged with conspiring to possess with the intent to distribute and to distribute in excess of fifty grams of cocaine base, in excess of five kilograms of cocaine, and in excess of 100 grams of heroin and marijuana (Count One). Goodwin also was charged with distribution of in excess of five grams of cocaine base (Counts Five, Six, Seven, Nine, and Twelve), distribution of in excess of fifty grams of cocaine base and cocaine (Counts Eleven and Thirteen), and possession with the intent to distribute in excess of fifty grams of cocaine base, cocaine, and heroin (Count Twenty-five). Brown, Doerr, and Phillips additionally were charged with the use of a telephone to facilitate the distribution of cocaine and cocaine base (Count Seventeen). Finally, Phillips also was charged with distribution of in excess of five grams of cocaine base (Count Fourteen). The basic facts of the drug conspiracy, the object of which was to traffic drugs from Chicago for sale in southern Indiana, are not challenged on appeal.

In 2003, law enforcement in Evansville, Indiana, first discovered one tentacle of the conspiracy's illegal drug activity, which resulted in a joint federal, state, and local law enforcement investigation spanning three states. The investigation began with a series of controlled purchases of cocaine base and cocaine from several individuals, including Goodwin and Phillips. While the controlled buys allowed law enforcement to discover some of the conspiracy's Evansville-based, lower-level participants, those

street dealers did not disclose information regarding the primary source of the drugs and high-level dealers at the top of the conspiracy's hierarchy. The results of the initial investigation, however, provided the Drug Enforcement Administration ("DEA") with a basis to apply for a warrant authorizing electronic telephone wire surveillance against known members of the conspiracy. On April 29, 2004, the district court authorized the electronic wire surveillance of two telephones used by Michael Hardiman and a second individual. During the course of the electronic telephone wire surveillance, law enforcement authorities intercepted numerous conversations involving the Appellants, which detailed their distribution of cocaine base and cocaine.

Based on the information gained from the confidential informants and the electronic telephone wire surveillance, the government obtained indictments against the Appellants and their co-conspirators. Many of the Appellants' co-conspirators, including Hardiman, pleaded guilty and testified against the Appellants during their trial, which began on February 6, 2006, and concluded less than two weeks later. The jury found the Appellants guilty on all counts. Goodwin then moved for a new trial, and later was joined in his motion by the other Appellants. The district court denied Goodwin's motion.

Goodwin, Brown, Doerr, and Phillips filed a consolidated appeal challenging various aspects of their respective convictions and sentences. Additional details and the facts underlying the Appellants' theories and claims are set forth, as relevant, in the analysis below.

## II.

On appeal, the Appellants first collectively challenge the district court's orders of April 29, 2004, and May 27, 2004, that authorized and then re-authorized electronic telephone wire surveillance on certain members of the conspiracy. Specifically, the Appellants argue that it was unnecessary for the government to use electronic telephone wire surveillance in its investigation of the conspiracy because the continued use of confidential informants would have been more than sufficient to expose the entirety of the criminal activity and enterprise. This court reviews a district court's decision regarding the necessity of electronic telephone wire surveillance for abuse of discretion, "giving substantial deference to the determination of the issuing judge." *United States v. Zambrana*, 841 F.2d 1320, 1329-30 (7th Cir. 1988).

While probable cause is all that is needed for the government to obtain a search warrant, to obtain a warrant for electronic telephone wire surveillance under 18 U.S.C. § 2518(1)(c), the government must demonstrate a factual basis for its " 'statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.' " *Zambrana*, 841 F.2d at 1329 (quoting 18 U.S.C. § 2518(1)(c)). "In this circuit, we will affirm a district court's finding that normal investigative procedures [were] unlikely to be successful . . . [as long as] there exist[ed] a factual predicate in the affidavit." *Id.* at 1330 (internal citations and quotations omitted). Accordingly, we look to the affidavits that the government supplied to support its two applications for electronic telephone wire surveillance. Here, the government's original forty-two-page affidavit in support of its application, and its sixty-four-page

affidavit in support of its re-application, reasonably explained why the continued use of confidential informants would not accomplish the goals of the investigation and why a new method of surveillance was necessary. The government's affidavits also stated that, while the government initially had success using confidential informants, that technique likely would yield limited future results because of the informants' reluctance to testify, their inability to identify suppliers within the organization outside of Evansville, their inability to identify all of the local distributors within the organization, and their lack of information concerning locations used by the organization to store drugs outside of Evansville. Finally, the government's affidavits stated that information gleaned from the electronic telephone wire surveillance could be used to recruit future confidential informants who subsequently could be used instead of relying on future electronic surveillance. Based upon the information contained in the government's affidavit—the validity of which the Appellants have not challenged—we find that the district court did not abuse its discretion in authorizing the electronic telephone wire surveillance, which was necessary for the government's investigation.

Second, the four Appellants collectively argue that the district court should have granted the Appellants' motion for a new trial.[1] The Appellants' motion for a new trial was based on a document purporting to be a trial witness' admission of perjury. This court reviews a district court's denial of a motion for a new trial based on the alleged use of perjured testimony for abuse of discretion. *United States v. Payne*, 102 F.3d 289, 291-92 (7th Cir. 1996).

---

[1] Goodwin originally brought the motion for a new trial, and the other three Appellants subsequently joined.

The Appellants proffered a document in support of their motion for a new trial that purported to be a notarized statement from Seneca Binder, a former informant who testified against the Appellants. In the document, which the Appellants appended to their motion, Binder apologized for "committing an act of perjury in the trial of U.S. -vs- Goodwin" and for testifying "falsely against Mr. Goodwin." On June 1, 2006, the district court held a hearing on the motion. The Appellants called Binder as a witness. Binder testified that it was his signature on the document, but he did not draft or read the document prior to signing it. He also testified that he felt threatened by another jail inmate when told to "put your name right here," and stated that a notary was not present when he signed the document. Binder then informed the district court that the contents of the document were untrue and reaffirmed the truth of his testimony at trial. Based on Binder's testimony during the hearing, the district court denied the Appellants' motion for a new trial. On appeal, the Appellants rely solely on Binder's alleged recantation letter to support their argument. In light of Binder's testimony regarding the coercive and dubious circumstances under which he signed the letter, we find that the district court did not abuse its discretion in denying the Appellants' motion for a new trial.

Third, the Appellants collectively argue that the district court should not have allowed DEA Special Agent Douglas Freyberger to testify at trial as an expert witness on drug code language. Specifically, the Appellants assert that because Special Agent Freyberger testified at trial on the government's behalf as a fact witness based on his role as a case agent, the district court should have barred him from also testifying as an expert in interpreting drug code

language. The Appellants are not challenging the reliability or relevance of Special Agent Freyberger's testimony. Accordingly, the Appellants' challenge is based solely on their contention that Special Agent Freyberger's testimony as both a fact witness and an expert witness was confusing to the jury and thus unduly prejudicial to them.[2] This court reviews a district court's decision to admit expert testimony for abuse of discretion. *United States v. Ceballos*, 302 F.3d 679, 686 (7th Cir. 2002).

We previously have held that while testimony in dual roles could be confusing, it is permissible provided that the district court takes precautions to minimize potential prejudice. *United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002) ("Although we have acknowledged that there is a greater danger of undue prejudice to the defendants when a witness testifies as both an expert and a fact

---

[2] At the onset of Special Agent Freyberger's testimony, the government asked a series of questions to establish Special Agent Freyberger's qualification as an expert in drug code language. We note that "[t]his Court has recognized that narcotics code words constitute an appropriate subject for expert testimony, and that federal agents who have training and experience in drug-related transactions, crimes and prosecution are qualified to give expert testimony concerning the practices of those engaged in this type of activity." *United States v. Hughes*, 970 F.2d 227, 236 (7th Cir. 1992) (internal citations and quotations omitted). The government's examination of Special Agent Freyberger revealed that he had extensive experience in this area of law enforcement, and in particular the lingo used in the illegal drug trade. On appeal, the Appellants do not challenge Special Agent Freyberger's qualification as an expert, and concede that he "may have been qualified as an expert in 'code talk' in drug conspiracies."

witness, we have also indicated that a police officer may permissibly testify in both capacities." (internal citations omitted)). "The potential for prejudice in this circumstance can be addressed by means of appropriate cautionary instructions and by examination of the witness that is structured in such a way as to make clear when the witness is testifying to facts and when he is offering his opinion as an expert." *Id.* In this case, to avoid jury confusion and prejudice to the Appellants, the district court gave a pattern jury instruction regarding expert testimony and permitted the Appellants' respective counsels to cross-examine Special Agent Freyberger extensively. Further, Special Agent Freyberger's testimony was limited to two subjects: (1) the foundation for the wiretaps (as a fact witness); and (2) interpretation of code language used (as a expert witness). While Special Agent Freyberger provided his testimony in both capacities during a single trip to the witness stand, the government structured its questioning to prevent the two discrete subject matters of his testimony from overlapping. Accordingly, the district court did not abuse its discretion when it permitted Special Agent Freyberger to testify both as a fact witness and as an expert witness.

Fourth, Brown and Doerr (but not the other two Appellants) argue that the district court erred in determining the amount of drugs for which each was responsible for purposes of calculating their advisory Guideline sentencing ranges. Specifically, Brown and Doerr contest the attribution of their co-conspirators' drug quantities in the calculation of the quantity of drugs for which they are responsible. This court reviews a district court's factual findings for purposes of determining the applicable advisory Guideline range for clear error. *United States v. McLee*, 436 F.3d 751, 765 (7th Cir. 2006).

It is well settled that "[i]n a drug conspiracy each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to him." *Id.* (citing *United States v. Paters*, 16 F.3d 188, 191 (7th Cir. 1994)); U.S.S.G. § 1B1.3(a)(1)(B). A co-conspirator's conduct is reasonably foreseeable if the defendant-conspirator " 'demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct.' " *United States v. Zarnes*, 33 F.3d 1454, 1474 (7th Cir. 1994) (quoting *United States v. Edwards*, 945 F.2d 1387, 1394 (7th Cir. 1991)). For sentencing purposes, the Federal Rules of Evidence do not apply, and the district court may consider a broad range of information. *United States v. Johnson*, ___ F.3d ___ , 2007 WL 1583993, at *2 (7th Cir. June 4, 2007) (stating that "a district court in determining a sentence is not bound by the same stringent evidentiary standards as are applicable in a criminal trial"). Here, the district court considered a wide array of evidence showing that both Brown and Doerr were heavily involved in a conspiracy to distribute kilograms of cocaine and cocaine base. Specifically, the district court found that the evidence gathered from the co-conspirators' testimony and conversations involving and regarding Brown and Doerr obtained from electronic telephone wire surveillance confirmed drug amounts attributable to the conspiracy in excess of 500 grams of cocaine base and in excess of five kilograms of cocaine. In particular, the district court considered the quantity of drugs to which Brown's and Doerr's co-conspirator Hardiman pleaded guilty. Hardiman, who named Brown as his cocaine and cocaine base supplier, admitted to distributing at least 500 grams of cocaine base and an additional one kilogram quantity of cocaine, which, when

aggregated, converted to 10,000 to 30,000 kilograms of marijuana and resulted in a base offense level of 36. Although the jury's verdict forms could be interpreted to indicate a finding that the conspiracy was responsible for lower amounts of cocaine and cocaine base,[3] the district court considered the totality of the evidence and sentenced

---

[3] For each of the four Appellants, the jury was provided with a separate verdict form. Regarding Count One, the conspiracy charge, each Appellant's respective verdict form asked the jury to find beyond a reasonable doubt whether the Appellant was guilty or not guilty. After having found each of the Appellants guilty of the offense changed in Count One, each of the four verdict forms identically instructed the jury to determine the amount of drugs "involved in the conspiracy." That query was divided into two separate questions, one regarding the amount of cocaine base and one regarding the amount of cocaine, with four potential ranges from which to select for each. Despite the fact that these questions asked the jury to make a finding regarding the total amount of each drug for the *conspiracy*, rather than for each *individual defendant*, the jury found different amounts of drugs attributable to the conspiracy on three of the four verdict forms. On Brown's verdict form, the jury found beyond a reasonable doubt a conspiracy to distribute in excess of 500 grams but less than five kilograms of cocaine, but no cocaine base. On Doerr's verdict form the jury found beyond a reasonable doubt a conspiracy to distribute and possess with intent to distribute in excess of five grams but less than fifty grams of cocaine base, but no cocaine. Phillips' verdict form contained identical quantities as Doerr's verdict form. Finally, Goodwin's verdict form contained the highest findings of drug quantity, with the jury finding beyond a reasonable doubt a conspiracy to distribute in excess of fifty grams of cocaine base and 500 grams but less than five kilograms of cocaine. Neither party addressed these discrepancies in their briefs or at oral argument.

Brown and Doerr based on the quantity to which Hardiman admitted distributing. The district court was not bound by the jury's findings regarding drug quantity or type on the Appellants' verdict forms, or even by the evidence that the jury considered. *See United States. v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004) (stating that "a judge may consider otherwise inadmissible evidence in calculating a sentence" provided that the "evidence upon which the judge relies" has "'sufficient indicia of reliability'"). Further, a district court judge makes findings for sentencing purposes under the preponderance of the evidence standard of proof, rather than the reasonable doubt standard of proof used by the jury in determining guilt. *United States v. Sliman*, 449 F.3d 797, 800 (7th Cir. 2006) (stating that "the district court is to use the preponderance of evidence standard of proof when finding facts that affect a defendant's sentence"). Thus, so long as the district court's sentence did not exceed the statutory maximum allowed based on the jury's findings as to the amounts attributable to the conspiracy, the district court is not bound by the jury's finding. *See United States v. Macedo*, 371 F.3d 957, 963 (7th Cir. 2004) (citing *United States v. Hernandez*, 330 F.3d 964, 981 (7th Cir. 2003) (reasoning that *Apprendi* is inapplicable when the defendant is sentenced below the statutory maximum for the charged offense)); *see also United States v. Booker*, 543 U.S. 220, 244 (2005) (stating that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by . . . a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt"). In this case, Brown and Doerr do not claim that their sentences exceeded the statutory maximum allowable based on the jury's findings. Therefore, based on the totality of the

evidence presented against Brown and Doerr at trial and during the sentencing hearing regarding the total quantity of drugs involved in the conspiracy, as well as their direct involvement with significant quantities of those drugs, we find that the district court did not clearly err in calculating the applicable advisory Guideline ranges for Brown and Doerr.

Finally, Doerr alone argues that the district court erred by denying his motion for severance. This court reviews a district court's refusal to grant a motion for severance for abuse of discretion. *United States v. Donovan*, 24 F.3d 908, 915 (7th Cir. 1994). It is well settled that co-conspirators who are charged together generally should be tried together. *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "The district court is given wide discretion in determining when the prejudice of joinder outweighs the benefits of a single trial." *Id.* (citing Fed. R. Crim. P. 14). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *Id.* (internal citations and quotations omitted). In short, "[s]everance should be granted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539).

Here, Doerr based his motion for severance upon his intent to employ at trial the affirmative defense of reliance on public authority based on his prior status as a confidential informant for the government. The district court, however, found that Doerr was not entitled to assert the public authority defense because the electronic telephone wire surveillance revealed that Doerr engaged in freelance

drug dealing distinct from the controlled deals that he made at the government's instruction as a then-confidential informant. In other words, the district court found that Doerr was attempting to play both sides of the street by continuing to deal drugs independently while making separate controlled buys for the government. Doerr does not challenge the district court's ruling, and thus the public authority defense cannot serve as the basis for his challenge to the district court's denial of his motion for severance. Moreover, even if Doerr could have asserted the public authority defense, his assertion of that affirmative defense would not have required severance because mutually antagonistic defenses mandate severance only if acceptance of one defendant's defense precludes the acquittal of another defendant, and Doerr's affirmative defense did not. *Id.* ("The mere presentation of mutually antagonistic defenses does not require severance." (citing *Zafiro*, 506 U.S. at 538)). Further, the district court did not prevent Doerr from introducing evidence of his past cooperation with the government, and it allowed Doerr to cross-examine the government's witnesses regarding his service as a confidential informant. Accordingly, Doerr has failed to demonstrate that he was unduly prejudiced from being tried jointly with his co-conspirators, and we find that the district court did not abuse its discretion by denying Doerr's motion for severance.

### III.

The district court did not err in authorizing and then re-authorizing electronic telephone wire surveillance on certain members of the conspiracy, denying the Appellants' motion for a new trial, allowing DEA Special Agent Douglas Freyberger to testify at trial as an expert witness,

determining the amount of drugs for which Brown and Doerr each were responsible for purposes of calculating their advisory Guideline sentencing ranges, or denying Doerr's motion for severance. Accordingly, we AFFIRM the Appellants' convictions and sentences.

A true Copy:

      Teste:

                         _____

                         *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*