NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2007
Decided August 29, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Nos. 06-2951, 06-4087

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

WILLIE L. HARDIMAN, III and
LESLIE T. HARDIMAN,
    *Defendants-Appellants.*

Appeals from the United States
District Court for the Southern
District of Indiana,
Terre Haute Division.

No. 2:05CR00026

Larry J. McKinney,
*Chief Judge.*

# O R D E R

Brothers and co-defendants Willie and Leslie Hardiman challenge their convictions on the grounds that the district court erred when it denied a motion to sever their trials, admitted an inadequately redacted inculpatory statement by Leslie Hardiman, and allowed hearsay testimony into evidence in violation of the Confrontation Clause. They also challenge the sufficiency of the evidence, and Willie Hardiman argues that his sentence is unreasonable.

The defendants were indicted for conspiracy to distribute in excess of 50 grams of crack cocaine, and possession with intent to distribute in excess of 50 grams of crack cocaine. See 21 U.S.C. §§ 841(a)(1), 846. Willie Hardiman moved

for severance of their trials, but the district court denied that motion. The trial brought out the following facts: On December 16, 2005, federal and state police jointly investigating cocaine trafficking in the Terre Haute, Indiana area arrested Joseph Cherry, having previously conducted several controlled cocaine transactions with him. Cherry agreed to cooperate with the police. Though he did not testify at trial, police testified that he had paged Leslie Hardiman, whom he identified as his cocaine provider, and a few moments later received a return call. The caller's name appeared on the phone as "Jerry Curl," which an officer recognized as a street name for Leslie Hardiman. Cherry then set up a meeting to purchase cocaine. Police intercepted Leslie on his way to the meeting, while he was driving a car identified by Cherry. When Leslie pulled over in an alley, Willie Hardiman, who was traveling in the passenger seat, ran out of the van carrying a brown paper bag. As he ran, an officer saw him throw the paper bag into a bush. Police caught him and found the bag in the nearby bush. It contained more than 54 grams of cocaine. Both brothers were then arrested.

Leslie Hardiman made several phone calls from the police station that were recorded by police. He said several times during the calls that Cherry "set me up." Willie Hardiman called his mother and told her to tell others not to call Leslie's cellphone number any more because the police had confiscated the phone. Examining the phone, police discovered that the last number Leslie had dialed was to Cherry just before the scheduled drug transaction. Leslie's pager number matched the number dialed by Cherry when he contacted his source to set up the meeting.

The government also read into evidence a redacted statement that Leslie had given at the police station in which he admitted having sold cocaine to Cherry on prior occasions and having orchestrated the drug transaction with Cherry that day. He also admitted that he had arranged for Willie to become the supplier for Cherry's future cocaine purchases, but in the redacted statement Willie's name was replaced with "someone else" and "another individual": Leslie stated that he "intended to have someone else take over the cocaine business and that [he] was going to get back into the marijuana business. [He] intended to introduce someone else to Joe "Sonny" Cherry and informed Cherry that he would be dealing with another individual during any further transactions involving cocaine...."

Leslie Hardiman was found guilty on both the conspiracy and distribution counts and sentenced to 280 months. Willie was found guilty of conspiracy and sentenced to 292 months.

Regarding severance, the defendants contend that they wanted to present mutually antagonistic defenses and the joint trial hindered their ability to do so. But generally defendants charged together should be tried together because of the

economies of exploring all the facets of a single crime in a single case. *United States v. Goodwin*, Nos. 06-3057, 06-3658, 06-3660, 06-4047, 2007 WL 2077689, at *5 (7th Cir. July 23, 2007); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). Desire to present mutually antagonistic defenses does not require severance. See *Goodwin*, 2007 WL 2077689, at *5; *Carrillo*, 435 F.3d at 778; *United States v. Hoover*, 246 F.3d 1054, 1061 (7th Cir. 2001). Finger pointing is a benefit of joint trials; it helps the jury determine guilt. See *Hoover*, 246 F.3d at 1061. Severance is required only if a jury's acceptance of one of the defendants' defenses would preclude the acquittal of the other defendant. See *Goodwin*, 2007 WL 2077689, at *5; *Carrillo*, 435 F.3d at 778. The defendants' explanation of the antagonistic defenses they wanted to present is vague, but even if each wanted to argue that the other was solely responsible for the possession of and intent to distribute the crack cocaine, accepting the argument of one would not preclude the other's acquittal. See *Carrillo*, 435 F.3d at 778.

Willie Hardiman also argues that the district court erred when it admitted Leslie's redacted statement to police because replacing his name with "someone else" and "another person" was insufficient to conceal his identity. See *Richardson v. Marsh*, 481 U.S. 200, 207 (1987); *Bruton v. United States*, 391 U.S. 123, 126 (1968). Redaction is adequate if as redacted the defendant's statement no longer implicates the co-defendant. *Gray v. Maryland*, 523 U.S. 185, 188, 191, 194, 196 (1998); *Marsh*, 481 U.S. at 211; *United States v. Sutton*, 337 F.3d 792, 799 (7th Cir. 2003). It was adequate in this case. According to the redacted statement, Leslie Hardiman would introduce Cherry to an unidentified, new cocaine dealer at some unspecified future time. There is nothing to suggest that the new dealer was the person accompanying Leslie at the time of the transaction intercepted by police or that the introduction would take place during that transaction.

The defendants also argue that the district court erred in admitting Cherry's out-of-court statement to officers that Leslie Hardiman was his cocaine source and the person he called to set up the drug deal at the officers' request. They argue that these statements were hearsay. Because no objection was made on this ground at trial, we review for plain error. *United States v. Cotton*, 535 U.S. 625, 631-32 (2002); *United States v. Anderson*, 450 F.3d 294, 299 (7th Cir. 2006). The information contained in Cherry's statements to the officers was placed before the jury from other sources, and so the admission of his statements was harmless. Leslie Hardiman was identifiable as the party Cherry called to set up the drug deal because the phone number that Cherry called matched the number of the pager recovered from Leslie after arrest. Leslie even admitted that Cherry had "set [him] up" during one of his recorded phone calls, and that he received the call from Cherry and was on his way to sell drugs to Cherry when police arrested him.

The defendants also argue that the evidence was insufficient to support their conviction. Again the standard is plain error; and the evidence was sufficient to find both defendants guilty of conspiracy and Leslie Hardiman also guilty of possession with intent to distribute. Leslie admitted that he intended to sell drugs to Cherry and that he had sold him drugs in the past. And sure enough, Leslie and Willie Hardiman arrived at the scene of the anticipated drug deal (where police were waiting for them), and Willie ran from the truck with a bag of crack cocaine, the subject matter of the anticipated deal. After arrest, both defendants made calls warning others that they had been set up and not to call Leslie's cellular phone because it was in police custody. From this evidence a jury could rationally conclude that the two defendants had conspired to distribute crack cocaine and that Leslie had possessed the crack with the intent to distribute it, especially given that he was Cherry's usual supplier of crack cocaine.

Lastly, Willlie Hardiman argues that the imposition of a guidelines-range sentence for possession of crack cocaine was unnecessarily severe and produced an unwarranted disparity with other defendants who receive a lesser punishment for possession of powder cocaine. As Willie recognizes, we have repeatedly held that a district judge is obligated to apply the 100-to-1 crack-to-powder ratio when calculating a sentencing guidelines range, and cannot calculate a different guidelines range because of disagreement with Congress's policy of punishing the sale of crack cocaine more severely than the sale of powder cocaine. See *United States v. Jointer*, 457 F.3d 682, 686-87 (7th Cir. 2006).

AFFIRMED.