┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 25, 2018
Decided July 18, 2018

*Before*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2440

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v*. <br><br> ANTHONY LOMAX, a.k.a. ANT, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. <br><br> No. 1:12-CR-00189-3 <br><br> Sarah Evans Barker, <br> *Judge*. |

**O R D E R**

Anthony Lomax appeals his sentence for a gun crime and distributing heroin. He challenges the district court's conclusions that he is responsible for the total heroin quantity attributed to a joint drug operation with his two cousins, and that his prior conviction for attempted murder in Indiana is a "crime of violence" under the career-offender guideline. We affirm. The judge's drug-quantity finding is supported by evidence that Anthony coordinated activities, shared resources, and pooled profits with his two cousins, who were convicted of conspiring to possess and sell heroin. And Anthony's crime-of-violence argument is foreclosed by our recent decisions.

## Background

Anthony and his cousins, Brandon Lomax and Demond Glover, sold heroin in Indianapolis, often at "Spray 'Em Auto," a business Brandon owned. Authorities investigated them beginning in early 2011 until late 2012, when their drug operations ceased. Anthony bought heroin from Brandon, and from Glover at least once, and sold it to his own customers. Brandon and Glover also sold heroin, which they each obtained from their own single sources; each purchased about 100 to 300 grams about every two weeks, sometimes more frequently, for a total of 16.8 kilograms.

Anthony, while armed, chauffeured Brandon to heroin sales "multiple" times. He also agreed to "come through" for Brandon on short notice by repaying Brandon money he needed for a drug transaction. At least once Anthony sold heroin he obtained from Glover's car. One time Brandon was without heroin and referred a customer to Anthony, who made the sale. Another time, though, Anthony tried to convince one of Brandon's customers to buy heroin from him instead of Brandon. When a supplier came to Spray 'Em Auto and told Anthony that Brandon owed him for two kilograms of heroin, Anthony immediately relayed the message to Brandon.

Anthony sold a total of a kilogram of heroin to one customer who purchased up to ten grams from him as often as three times a week during 2012. To a confidential informant, Anthony sold about 63 grams of heroin in five controlled buys between September and November 2012.

A grand jury indicted Anthony, Brandon, and Glover for conspiring to possess and distribute heroin. 21 U.S.C. § 846. Anthony also was indicted on five counts of distributing heroin, 21 U.S.C. § 841(a)(1), and one count of possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). The co-defendants were convicted on all counts after a jury trial, and Anthony was sentenced to 400 months in prison. All three appealed.

This court vacated Anthony's conspiracy conviction because he was wrongly denied a buyer-seller jury instruction. *United States v. Lomax*, 816 F.3d 468, 477 (7th Cir. 2016). Although there was "some evidence that Anthony was part of the conspiracy," there was also evidence that he simply bought heroin from the conspirators. *Id.* at 476–77. This court affirmed the conspiracy convictions of Brandon and Glover. *Id.* at 479.

On remand the government moved to dismiss the conspiracy charge and to resentence Anthony on the distribution and gun convictions. Anthony agreed to dismissal, and the charge was dismissed.

A probation officer revised Anthony's presentence report, but nonetheless recommended finding him responsible for the total heroin attributed to the conspiracy—16.8 kilograms. The officer also recommended application of the career-offender guideline, U.S.S.G. § 4B1.1, based on Anthony's prior felony convictions that included attempted murder in Indiana, though application of this guideline did not affect his guidelines range of 360 months to life in prison. Anthony objected to the PSR, arguing there was insufficient evidence that his drug dealing was part of a common scheme with the convicted co-conspirators or that the conspiracy's total drug quantity was reasonably foreseeable to him.

At resentencing the district judge adopted the revised presentence report and re-imposed a term of 400 months. The judge found that 16.8 kilograms was an accurate estimate of the total quantity of heroin distributed by the conspiracy and, if anything, it understated the amount. The judge further found that this quantity was attributable to Anthony as relevant conduct under U.S.S.G. § 1B1.3; "from the evidence as a whole," the judge concluded that Anthony was a part of Brandon's "jointly undertaken criminal activity," and that the total quantity of heroin trafficked by the joint operation was reasonably foreseeable to Anthony. The judge incorporated her analysis from the original sentencing, at which she said Anthony was responsible for 16.8 kilograms of heroin based on the "interactions between and among" Anthony, Brandon, and Glover. The judge also found that Indiana attempted murder is a crime of violence for purposes of the career-offender guideline.

## Analysis

### A. Relevant-Conduct Finding

Anthony first contests the district judge's conclusion that he is accountable for the quantity of heroin attributed to the conspiracy. Uncharged offenses are relevant conduct if they are part of the same "common scheme or plan" as the offense of conviction. U.S.S.G. § 1B1.3(a)(2); *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000). "Offenses are part of a common scheme or plan if they are connected by at least one common factor," such as common accomplices, a shared purpose, or a similar modus operandi. *Zehm*, 217 F.3d at 511. In drug distribution cases, the defendant's relevant conduct will include drug quantities from transactions carried out by others, if those transactions were within the scope, and in furtherance, of criminal activity that the defendant agreed to jointly undertake, and the transactions were reasonably foreseeable to the defendant. *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Stadfeld*, 689 F.3d 705, 713 (7th Cir. 2012). The district judge's factual findings in determining the defendant's

relevant conduct are reviewed for clear error. *United States v. Patterson*, 872 F.3d 426, 437 (7th Cir. 2017); *United States v. Seymour*, 519 F.3d 700, 710–11 (7th Cir. 2008).

Anthony argues that the district judge clearly erred in concluding that his heroin distributions were part of Brandon and Glover's criminal scheme, U.S.S.G. § 1B1.3(a)(2), and that the total quantity of heroin attributed to this scheme was reasonably foreseeable to him, *id.* § 1B1.3(a)(1)(B)(iii). He does not contest the accuracy of 16.8 kilograms as the total heroin weight attributable to Brandon and Glover's conspiracy. Anthony concedes there is "evidence in support of" the district judge's relevant-conduct finding, but argues there is also "substantial evidence" that his distributions were not part of a common scheme.

His concession that some evidence supports the district court's relevant-conduct finding dooms his argument that his offense was separate from the conspiracy. "If two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous." *Stadfeld*, 689 F.3d at 713 (quotations and internal alterations omitted). In Anthony's first appeal, this court pointed to evidence that he was part of the conspiracy. *See Lomax*, 816 F.3d at 476 (Anthony sold heroin at Spray 'Em Auto, like Brandon and Glover; received customer from Brandon; and acted as Brandon's armed chauffer for heroin deals). Nonetheless, a finding of fact may be clearly erroneous, even though it is supported by evidence, if this court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005). However, none of Anthony's arguments reveals a mistake by the district judge.

We are unpersuaded by Anthony's argument that the judge was required to explain how his offense conduct—five heroin distributions—was related to the conspiracy in timing, regularity, and modus operandi. Anthony likens his case to *Ortiz*, where we said a district judge's "terse" relevant-conduct finding was clearly erroneous because the judge failed to address differences between the relevant conduct and offense conduct in temporal proximity, regularity, and modus operandi, 431 F.3d at 1041–43. But *Ortiz* is distinguishable because, there, the offense of conviction involved a drug different from that in the conspiracy, occurred in one location while the conspiracy spanned several states, and happened after the conspiracy "was exposed." *Id.* at 1041–42. Here, on the other hand, Anthony was convicted of distributing the only drug known to be involved in this conspiracy (heroin), in the same location used as the conspiracy's headquarters (a conspirator's auto-body shop), and only at times while the conspiracy still operated (late-2012).

Anthony makes three unpersuasive arguments that his heroin distributions were not part of his cousins' scheme. He points out the occasion when he tried to steal Brandon's customer and contends that he must have had his own scheme. But taking resources from each other allows co-conspirators to gain personally, without eliminating the possibility of a joint venture. *Cf. United States v. Adams*, 746 F.3d 734, 741 (7th Cir. 2014) (deciding that drug dealers who competed for commissions could be found to have sold drugs in furtherance of shared enterprise). Anthony argues that he must not have been involved in his cousins' scheme because he personally distributed much less heroin than they. Selling disparities among dealers, however, is consistent with those dealers operating within one scheme. *See United States v. Miller*, 834 F.3d 737, 742 (7th Cir. 2016). Lastly, Anthony contends that Brandon and Glover were merely his suppliers because he generally had his own customers. But we rejected this argument in *United States v. Melendez*, 819 F.3d 1006 (7th Cir. 2016), where we clarified that even if a defendant's distributions are part of a "separate business," the defendant is accountable for all reasonably foreseeable drug transactions made in furtherance of the jointly undertaken criminal activity. *Id.* at 1011–12.

At bottom, the district judge's finding of jointly undertaken criminal activity is well-supported. Joint criminal activity may be shown where dealers share customers, swap selling duties, and travel together to sell drugs. *See Miller*, 834 F.3d at 742. Here, Anthony sold heroin to a customer at Brandon's request and acted as his armed chauffer for drug deals. Anthony also quickly repaid Brandon a debt, not just to clear his own books, but specifically so that Brandon could complete a sale. *Cf. United States v. Fouse*, 578 F.3d 643, 654 (7th Cir. 2009) (determining that joint drug enterprise could be found where defendant sold drugs on credit knowing buyers needed them to be of sufficient quality for cutting and resale). And Anthony sold heroin from Spray 'Em Auto, the drug operation's home base, owned by Brandon.

Anthony next argues that the judge adopted the drug-quantity recommendation in the presentence report, 16.8 kilograms, without explaining why this amount ascribed to the conspiracy was reasonably foreseeable to him. *See* U.S.S.G. § 1B1.3(a)(1)(B)(iii). Anthony says the only evidence that he was aware of any amount distributed by Brandon or Glover is his conversation about Brandon's two-kilogram heroin debt.

But reasonable foreseeability "does not require that a coconspirator be aware of the precise quantity involved in each of an ongoing series of illegal transactions." *United States v. Longstreet*, 567 F.3d 911, 924 (7th Cir. 2009). The essential factor in deciding whether the total drug quantities were reasonably foreseeable to the defendant

is the degree of his or her participation in the joint undertaking. *See United States v. Goodwin*, 496 F.3d 636, 642–43 (7th Cir. 2007); *United States v. Edwards*, 945 F.2d 1387, 1393–94 (7th Cir. 1991). Anthony needed a "substantial degree of commitment" before the entire amount attributed to the joint undertaking can be found reasonably foreseeable to him. *See United States v. Magana*, 118 F.3d 1173, 1206 (7th Cir. 1997); *Edwards*, 945 F.2d at 1393–94.

The judge fulfilled her obligation to "explicitly state and support" her finding that the entire amount of drugs distributed by the joint scheme was reasonably foreseeable to Anthony. *See Zehm*, 217 F.3d at 511. At resentencing the judge incorporated her determination from the first sentencing hearing that 16.8 kilograms was reasonably foreseeable to Anthony based on the "interactions between and among" him, Brandon, and Glover. At that first hearing, she credited testimony that Anthony shared resources by selling drugs from Brandon's business and Glover's car, pooled profits with Brandon by repaying a debt so he could complete a heroin sale, and had coordinated with Brandon by acting as his armed chauffer. This is exactly the degree of involvement that Application Note 4(C)(vi) to § 1B1.3 describes as sufficient to hold a drug dealer accountable for the drug quantity attributed to other dealers. If, as here, the judge has found that the required relationship was present and the record supports this relevant-conduct finding, this court will not remand for a more detailed finding. *See United States v. Singleton*, 548 F.3d 589, 593 (7th Cir. 2008).

Lastly, Anthony argues that the agreed dismissal of the conspiracy charge prevented a jury from "acquit[ting] him of the charge," thereby "prov[ing]" that the drug quantity attributed to the conspiracy was unforeseeable to him. This argument is meritless. Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, whether or not charged as a conspiracy." *United States v. Acosta*, 534 F.3d 574, 582–83 (7th Cir. 2008) (quotation and citation omitted); *see also* U.S.S.G. § 1B1.3 cmt. n.1, cmt. n.3(B). Neither acquittal on a conspiracy charge, nor a jury's drug-quantity finding, precludes a sentencing judge from finding, by the lower, preponderance-of-the-evidence standard, that the defendant's offense conduct was part of a joint drug scheme that dealt quantities reasonably foreseeable to the defendant. *See United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015); *Goodwin*, 496 F.3d at 643. And although there was no retrial, a defendant, like Anthony, has a "meaningful opportunity" to rebut evidence of his involvement in an uncharged drug conspiracy if, at sentencing, he is given the chance to testify, cross-examine the government's witnesses, and call his own. *See Miller*, 834 F.3d at 743–44. Anthony declined these opportunities.

In sum, the district judge did not clearly err by holding Anthony accountable for the quantity of heroin attributed to the uncharged conspiracy.

## B.    Career-Offender Guideline

Anthony contends that his Indiana attempted murder conviction is not a "crime of violence" under the career-offender guideline because this conviction does not require the use, attempt, or threat of physical force. After briefing, we decided *Michael Hill v. United States*, 877 F.3d 717 (7th Cir. 2017), which holds that Illinois attempted murder is a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), because an attempt to commit a violent felony is itself a violent felony, 877 F.3d at 719. Since the ACCA's definition of violent felony applies interchangeably with the Guidelines' definition of crime of violence, *see United States v. Edwards*, 836 F.3d 831, 834 n.2 (7th Cir. 2016); *United States v. Taylor*, 630 F.3d 629, 633 n.2 (7th Cir. 2010), we ordered the parties to brief the effect of *Michael Hill* in this appeal.

Anthony argues against applying *Michael Hill* here because, he says, attempted murder in Illinois "involve[s] the use of force," whereas attempted murder in Indiana does not. Contrary to Anthony's belief, Illinois attempted murder *does not* categorically require actual use or threats of physical force; intent to commit violence is enough. *Michael Hill*, 877 F.3d at 718. So, for example, purchasing a weapon to be used to kill someone or planning an assassination suffices. *Id.* We said in *Hill* that "[w]hen the intent element of the attempt offense includes intent to commit violence against the person of another, … it makes sense to say that the attempt crime itself includes violence as an element." *Id.* at 719 (citing *Morris v. United States*, 827 F.3d 696, 698–99 (7th Cir. 2016) (Hamilton, J., concurring)). After all, the ACCA does not itself require the *actual* use of force; an attempted use also satisfies § 924(e)(2)(B)(i). *Michael Hill*, 877 F.3d at 719. The reasoning of *Michael Hill* applies equally here because the career-offender guideline's definition of crime of violence, like § 924(e)(2)(B)'s definition of violent felony, treats attempted force and completed force the same, U.S.S.G § 4B1.2(a)(1).

We also conclude that Anthony's Indiana attempted-murder conviction is a crime of violence under the reasoning of *Antoine Hill v. United States*, 827 F.3d 560 (7th Cir. 2016). There we held that Illinois attempted murder is a crime of violence under the career-offender guideline because U.S.S.G. § 4B1.2(a)(1) says that a "'crime of violence' include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such' crimes." *Id.* at 561. The guideline at issue here and in *Antoine Hill* is the same, and there is no meaningful distinction, for our purposes, between the Illinois

statutes that punish attempt and murder, *see* 720 ILCS §§ 5/8-4(a), 5/9-1(a)(1), and the corresponding statutes in Indiana, *see* Ind. Code §§ 35-41-5-1(a), 35-42-1-1(1).

The judgment of the district court is

AFFIRMED.