Brennan, Circuit Judge, dissenting.
The jury was presented with enough evidence at trial to find Garcia guilty beyond *505 a reasonable doubt. Viewing that evidence under the controlling legal standard of FED. R. CRIM. P. 29(c), I respectfully part company with my colleagues and defer to the jury's verdict.
A. The Trial Evidence
After a three-day trial, receiving instructions, and deliberating, the jury unanimously convicted Garcia on two counts: (1) using a cell phone to distribute a controlled substance in violation of 21 U.S.C. § 843(b) ; and (2) knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1).[1] The trial evidence did not contain the proverbial "smoking gun"-Garcia was not caught holding a kilogram of cocaine-but it did include:
• Eight recorded phone conversations between Garcia and a suspected drug distributor, Cisneros, with both men using multiple coded terms;
• Unchallenged and unrebutted expert witness testimony explaining those coded terms, individually and cumulatively, refer to the distribution of cocaine;
• Two cell phones found in Garcia's possession and a corresponding call log confirming the calls between Garcia and Cisneros;
• Photographic and video surveillance from a pole camera of Garcia on April 17, 2012 entering a residence owned by Cisneros and leaving the residence a few minutes later;
• Photographic, video, and in-person surveillance of Garcia on April 20, 2012 pulling up to Cisneros' house, walking to the front porch, returning to the vehicle with Cisneros, driving to another residence owned by Cisneros, entering the second residence with Cisneros, and driving away alone about 15 minutes later; and
• The testimonies of three law enforcement officers corroborating the surveillance of Garcia on April 17, 2012 and April 20, 2012 and identifying him as the same person who entered Cisneros's residences on both days.
The majority opinion considers the recorded cell phone conversations as interpreted by Bureau of Alcohol, Tobacco, and Firearms Special Agent Christopher Labno as the entire case against Garcia. For the majority, Labno's testimony was insufficient for a rational jury to convict Garcia on the distribution charge.[2] It labels this evidence uncorroborated-"educated speculation"-rather than proof beyond a reasonable doubt.
This phone call evidence has two parts: the calls themselves, and Labno's expert interpretation of them.
First, the contents and topics of the phone calls show:
• The respective roles played by Garcia as the seller and Cisneros as the buyer;
• The roles and reactions of other actors, Garcia's suppliers, including that they would be willing to work with Cisneros on future deals;
• The progression of the sale, from how much Cisneros wanted to pay, to *506 concerns about its quality, discussion as to price, and taste testing the product;
• How Cisneros's reputation as a seller could be adversely affected if Garcia sold Cisneros inferior product; and
• How the product may have to be altered by "cooking."
In their numerous conversations, Garcia and Cisneros do not explicitly reference "cocaine," as drug dealers almost never do and would not. They instead used common terms as substitutes ("work," "girl," "white girl," "tix," "taste," "worn out," "cook," "two-four," etc. ). While an untrained juror may not be familiar with these terms, federal courts routinely permit an expert witness to be "helpful to the jury" in interpreting such evidence. See United States v. Ceballos , 302 F.3d 679, 687-88 (7th Cir. 2002) (DEA agents' interpretations were "helpful to the jurors" in applying "alternative theories of which they ordinarily would not have been aware") (internal quotations omitted); see also United States v. Jones , 763 F.3d 777, 802 (7th Cir. 2014) (an expert witness may "assist the jury" in resolving ambiguities); United States v. York , 572 F.3d 415, 423 (7th Cir. 2009) (allowing expert witnesses to translate "drug jargon and code words that might seem entirely innocuous to an untrained jury."). Just as a jury may need the assistance of a translator to consider whether a foreign-language conversation concerns distributing cocaine, the same can be true of coded drug jargon.
This brings us to the second part of the phone call evidence, Agent Labno's testimony. Labno has operated as an undercover special agent in Chicago for approximately 16 years. He testified to his familiarity with the price, quantity, and quality of cocaine, including common code words used in local drug trafficking. He also testified to his personal use of a cell phone to facilitate drug dealings, and his own experience cooking "crack" as an undercover agent. It would appear there is no aspect of the local cocaine distribution process with which Labno is not familiar.[3]
At trial, the defendant did not object under FED. R. EVID. 702 to Labno's expertise or to the jury's reliance on his expert interpretations when weighing the evidence. Indeed, Garcia's counsel cross-examined Labno only briefly (four pages of transcript). The majority opinion credits the cross-examination of Agent Labno for laying a foundation that the taped conversations make sense only if Garcia is assumed to be drug trafficking. But in his response to that question, Agent Labno specifically denied that assumption: "I'm not making assumptions about that. I'm just interpreting what the wiretap conversations are based on the code words in the context in my experience."
Garcia's principal argument at trial was that the recorded conversations were so ambiguous the jury could not reasonably determine their meaning.[4] In helping the *507 jury interpret the phone conversations, Labno explained that, in his experience, the terms "work" and "girl" refer to cocaine; "taste" and "cooking" refer to the quality of cocaine; "tix" or "tickets" refer to drug payments; and "two-four" refers to $24,000, the going market-price for a kilogram of cocaine. We have often recognized these same expert interpretations in other drug cases. In United States v. Fuller , 532 F.3d 656, 661 (7th Cir. 2008), we recognized defendant's use of the code word "work" to mean cocaine. See also United States v. Page , 521 F.3d 101, 108-09 (1st Cir. 2008) (noting "work" was the typical drug-dealers' code for cocaine); United States v. Benitez , 92 F.3d 528, 532 (7th Cir. 1996) (same). After hearing Labno's interpretation of the phone calls, it was still up to the jury to decide how much weight to give his testimony and to draw its own conclusions about the actual meaning of the conversations. The jurors did just that.
B. The Legal Standard
Under Rule 29(c), the standard a defendant must meet in challenging the sufficiency of the evidence on a criminal conviction is very high. See United States v. Torres-Chavez , 744 F.3d 988, 993 (7th Cir. 2014) (the defendant's Rule 29 burden is "nearly insurmountable"); United States v. Jones , 713 F.3d 336, 339 (7th Cir. 2013) ("a nearly insurmountable hurdle"); United States v. Griffin , 684 F.3d 691, 694 (7th Cir. 2012) ("a heavy burden"); United States v. Bogan , 267 F.3d 614, 623 (7th Cir. 2001) ("a nearly insurmountable burden"); United States v. McCaffrey , 181 F.3d 854, 856 (7th Cir. 1999) ("a daunting task").
Rule 29 post-verdict review is narrowly limited to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). This "does not require [the] court to ask itself whether it believes that the evidence at the trial established guilt." Jackson , 443 U.S. at 318-19, 99 S.Ct. 2781 (internal quotations omitted); see also Jones , 713 F.3d at 340 ("The inquiry does not ask what we would have decided if we were on the jury. We need not be convinced by the evidence ourselves."); United States v. Genova , 333 F.3d 750, 757 (7th Cir. 2003) (" Rule 29(c) does not authorize the judge to play thirteenth juror."). We will "overturn the jury's verdict only when the record contains no evidence, regardless of how it is weighed, from which the factfinder could find guilt beyond a reasonable doubt." United States v. Faulkner , 885 F.3d 488, 492 (7th Cir. 2018) (internal quotations omitted); see also United States v. Farris , 532 F.3d 615, 618 (7th Cir. 2008) ("[W]e will overturn a conviction based on insufficient evidence only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt.") (internal quotations omitted).
The evidentiary standard of proof-beyond a reasonable doubt-does not change during post-verdict review. But, unlike pre-verdict, the evidence is construed "in the light most favorable to the government," creating a rebuttable presumption *508 of conviction. See United States v. Seidling , 737 F.3d 1155, 1159 (7th Cir. 2013) ; see also United States v. Niggemann , 881 F.3d 976, 980 (7th Cir. 2018) (We "draw all reasonable inferences in the light most favorable to the prosecution."). While the evidence must "reasonably support a finding of guilt beyond a reasonable doubt," Jackson , 443 U.S. at 318, 99 S.Ct. 2781, deference to the jury's deliberations prevents the court from assessing the quality of the evidence any further. See United States v. Smallwood , 188 F.3d 905, 913-14 (7th Cir. 1999) (court defers to the jury's credibility determinations without making its own); see also United States v. Reed , 875 F.2d 107, 111 (1989) (in reviewing a Rule 29 motion the judge must respect "the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.").
The narrow scope of Rule 29 is defined by phrases such as "no evidence" and "devoid of evidence." This language focuses the court's Rule 29 role on assessing the quantum of evidence, not its weight or credibility. In conducting a quantum analysis, the court must determine whether the evidence, "taken as a whole," is enough for any rational jury to find guilt beyond a reasonable doubt. Smallwood , 188 F.3d at 913. Unless Garcia rebuts the presumption of conviction by showing the government submitted no evidence for a rational factfinder to find him guilty beyond a reasonable doubt, the standard requires that we defer to the jury's verdict.
The standard does not require, though, that we explain how the case might fare in the civil context. The majority opinion compares the judge's role under Rule 29 with the judge's role in considering motions for summary judgment under FED. R. CIV. P. 56 and judgment as a matter of law under FED. R. CIV. P. 50, respectively. This suggestion is fine to the extent it repeats current law toward a helpful comparison. But "enforcing outer limits on reasonable inferences, guided by the relevant standard of proof" does not and should not transform the judge's role under Rule 29 into weighing the trial evidence.
C. Other Sufficiency-of-the-Evidence Cases
The majority opinion compares the evidence in this case to other sufficiency-of-the-evidence cases, and concludes it falls short because the phone calls and Labno's testimony are not corroborated by "actual evidence" of drugs. On comparison, that conclusion does not hold up.
In the case law the majority cites, we have found sufficient evidence to support a conviction when there is pole camera video surveillance of the defendant ( United States v. Cejas , 761 F.3d 717 (7th Cir. 2014) ), third-party testimony, ( Cejas ), loose association with a co-defendant ( United States v. Duarte , 950 F.2d 1255 (7th Cir. 1991) ), carrying a "tool of the drug trade" ( Duarte ), and expert interpretation of defendant's drug deal records ( Duarte ). Some combination of this evidence has been sufficient to convict on drug distribution charges, even when there are no drugs ( Cejas ; Duarte ), no cash ( Duarte ), no weapons ( Duarte ), no drug paraphernalia ( Cejas ; Duarte ), and no direct admissions ( Cejas ; Duarte ). In contrast, we have found insufficient evidence when recorded phone conversations between co-defendants lack detail ( United States v. Jones , 713 F.3d 336 (7th Cir. 2013) ), and when the government's case is "focused on" ( id . at 347 ) the defendant's "mere presence" at the crime scene ( Piaskowski v. Bett , 256 F.3d 687 (7th Cir. 2001) ).
Here, it is undisputed it was Garcia's voice on the phone call recordings with Cisneros; photo and video surveillance *509 from a pole camera showed Garcia at Cisneros's residences on April 17 and April 20; police officers were present at the exchange on April 20 and later identified Garcia as the same person on both days; two cell phones were found in Garcia's possession and call logs corroborated Garcia's conversations with Cisneros; and expert testimony interpreted the terms Garcia used and the context of his calls with Cisneros as a drug deal. Garcia's use of his cell phone as a "tool of the drug trade" and Labno's interpretation explaining the coded drug deal is like the Duarte defendant using a pager and that expert's interpretation of the defendant's notes as records of drug deals, which we deemed sufficient. And unlike the recorded conversations in Jones , which lacked sufficient detail, Garcia's eight conversations with Cisneros cover every aspect of their on-going deal, from price, quality, and quantity to maintaining a good reputation as a dealer. All this evidence adds up to far more than "mere presence," and, most importantly, far more than "no evidence." Further corroboration is not necessary. See Smallwood , 188 F.3d at 913 ("[corroborative evidence] need only ensure the reliability" of testimonial evidence) (internal citation omitted).
In comparing these cases, the majority hints at a false distinction between direct and circumstantial evidence, signaling that the strength of the evidence depends on its weight. The law makes no such distinction, and circumstantial evidence can form the basis for guilt beyond a reasonable doubt. See United States v. Moore , 572 F.3d 334, 337 (7th Cir. 2009) ("A verdict may be rational even if it relies solely on circumstantial evidence."); see also United States v. Galati , 230 F.3d 254, 258 (7th Cir. 2000) ("A jury's verdict may rest solely on circumstantial evidence."). Here, the jury was instructed that "[t]he law makes no distinction between the weight to be given to either direct evidence or circumstantial evidence." The jurors followed those instructions, and found Garcia guilty.
Based on the evidence the government submitted in this case, a rational jury could reasonably conclude: (1) Garcia's phone call with Cisneros on April 17, 2012[5] was about selling cocaine; (2) Garcia physically delivered cocaine to Cisneros's residence on April 17, 2012; (3) Garcia used the cell phone officers found in his possession to communicate with Cisneros about the cocaine sale; and (4) Agent Labno's testimony, the pole camera photo and video surveillance, the in-person identifications of Garcia at Cisneros's homes on April 17 and April 20, the phones found in Garcia's possession and the call logs all support a drug-related interpretation of the recorded telephone conversations between Garcia and Cisneros from April 17, 2012 through April 20, 2012.[6]
Because Garcia failed to rebut the presumption of conviction by showing the government submitted no evidence for a rational factfinder to find him guilty beyond a reasonable doubt, the legal standard requires that we defer to the jury's verdict.
*510 For these reasons, I respectfully dissent from the majority's opinion.

The jury was properly instructed that it needed to find guilt beyond a reasonable doubt on each element of the two counts, weigh the evidence, and render its verdicts based on that evidence.

The majority opinion does not separately address the sufficiency of the evidence concerning the cell phone count. Given the stipulation to Garcia's voice on the recorded calls, the sufficiency of the evidence as to narcotics "distribution" is presumably dispositive on the cell phone count as well.

The majority opinion notes how Agent Labno "had no firsthand knowledge of the Cisneros investigation." Of course, if he had such knowledge and was called as a fact and expert witness, that could be criticized as confusing the jury, and require precautions to minimize potential prejudice. See United States v. Farmer , 543 F.3d 363, 369 (7th Cir. 2008) (citing United States v. Goodwin , 496 F.3d 636, 641-42 (7th Cir. 2007) ). Given Labno's role as an expert, his not knowing Garcia and Cisneros should not be characterized as a negative. Indeed, this court has stated experts need not be familiar with a "particular conspiracy" but "can determine, based on their expertise, that certain words have drug-related meanings within the context of a single conversation." United States v. York , 572 F.3d 415, 424 (7th Cir. 2009).

Because Garcia stipulated that the conversations were ambiguous, he opened the door to Labno's interpretation. An expert's interpretation may be helpful to the jury in determining the meaning of words and terms-no matter how common they may be-when they are used ambiguously in conversation. See York , 572 F.3d at 423 (recognizing expert's interpretation when "six," "nine," "five dollar," and "fifty-five" were used ambiguously in defendant's conversations); see also United States v. Ceballos , 302 F.3d 679, 687-88 (7th Cir. 2002) (upholding agents' interpretations of simple pronouns "it," "them," and "both" as referring to methamphetamine shipments because defendants used those pronouns ambiguously in conversation).

In his motion, Garcia incorrectly cited these dates as in 2013.

Although the Rule 29 motion "need not spell out the particular basis for a challenge to the sufficiency of the evidence, when such a motion raises specific arguments, any claims not presented in the motion are waived." United States v. Moore , 363 F.3d 631, 637-38 (7th Cir. 2004) (defendants "lost the right to complain about the failure of proof on a key element of the government's case" that was not specifically argued in their Rule 29 motions) (internal citation omitted). Because Garcia raised only these specific claims in his Rule 29 motion, he has waived any other grounds for acquittal.